**BOWLES, Administrator, v. MURPHY et al.**

**Civil Action No. 800.**

District Court, D. Colorado.

Sept. 8, 1945.

Max D. Melville, Regional Litigation Atty., Office of Price Administration, and George Baer, Associate Enforcement Atty., Office of Price Administration, both of Denver, Colo., for plaintiff.

Byron G. Rogers and Frank A. Bruno, both of Denver, Colo., for defendants.

RICE, District Judge.

This cause came on to be tried to the Court on July 18 and 19, 1945, a jury having been expressly waived by the parties. Plaintiff appeared by Max D. Melville, Regional Litigation Attorney, and George Baer, Associate Enforcement Attorney, his attorneys of record herein, and the defendants appeared by Frank A. Bruno and Byron G. Rogers, their attorneys of record herein, and the Court, having heard and considered the evidence and argument of counsel, makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

I. This is an action brought pursuant to Section 205(e) of the Emergency Price Control Act of 1942, as amended and extended June 30, 1944, 50 U.S.C.A.Appendix § 901 et seq., wherein the Administrator of the Office of Price Administration seeks to recover treble damages against the defendants, co-partners, for an alleged violation of Maximum Price Regulation 540, in the sale by them of a 1941 Dodge Sedan to one Herbert C. Anderson of Denver, Colorado.

II. The defendants on or about October 31, 1944, sold, delivered and transferred to Herbert C. Anderson, a used 1941 Dodge Four-Door Luxury Liner Sedan, equipped with heater and fluid drive. It is agreed by the parties that the ceiling price of the Dodge Sedan sold by the defendants, provided the dealer sold the same with the written warranty, was the sum of Thirteen Hundred Ninety-three Dollars and Seventy-five Cents ($1393.75).

III. As part payment for the Dodge Sedan, the defendant received from the purchaser as a trade-in, one 1940 Ford Two-Door Sedan and Nine Hundred Dollars ($900) in cash; Two Hundred Dollars ($200) direct from the purchaser and Seven Hundred Dollars ($700) by check from the Fishel Finance Company. It was admitted that the ceiling price of the trade-in car, the Ford Two-Door Sedan, for trade-

in purposes was, at the time, Seven Hundred Fifteen Dollars ($715).

IV. The contention of the Administrator is that there were two types of overcharge in the transaction: First, there was an overcharge of Two Hundred Seventy-eight Dollars and Seventy-five Cents ($278.75) by reason of the fact that no written warranty was given to the purchaser by the seller. The other type of overcharge was for Two Hundred Twenty-two Dollars ($222) resulting from the defendant's failure to give the purchaser the full, reasonable value allowance for the Ford car trade-in.

■ The evidence in regard to the written warranty was conflicting. The weight of the evidence is to the effect that no written warranty was given, and I find as a fact that the seller did not give to the purchaser a written warranty, and that by reason of its failure to give a written warranty under the rules and regulations affecting a ceiling price, there was an overcharge, by reason thereof, of Two Hundred Seventy-eight Dollars and Seventy-five Cents ($278.75).

■ It is my conclusion that there was likewise an overcharge by the seller of Two Hundred Twenty-two Dollars ($222) resulting from the defendants' failure to give the purchaser the full, reasonable value allowance for the Ford car traded in. The weight of the evidence is that the purchaser, learning of the Dodge Sedan and desiring to acquire it, approached the salesman of the defendant and began negotiations for the purchase of the Sedan. Thereupon, the salesman inquired of the purchaser what sort of car he had to trade in and being told of the Ford, the salesman drove the Ford some distance and after returning advised the purchaser that he would trade for Nine Hundred Dollars ($900) difference. The purchaser commented that that was beating down the ceiling price of his car. Thereupon, the salesman informed the purchaser "we are dealing for differences on this particular car." A report of the transaction was made by the salesman, a copy of which was furnished to the purchaser showing that the trade was for a difference of Nine Hundred Dollars ($900). This report was made in triplicate, an original and two carbon copies. It is admitted by the defendants that when the report of the transaction was made to the Denver War Price and Ration Board, the records reflected that the Dodge had been sold

for Fourteen Hundred Ninety-three Dollars ($1493), and that they had paid for the Ford, Seven Hundred Fifteen Dollars ($715), Defendants admit too that after the transaction was had, the original report of the sale made by the salesman, was changed to show that an allowance of Four Hundred Ninety-three Dollars ($493) had been made for the Ford car. The purchaser denies any mention of an allowance of Four Hundred Ninety-three Dollars ($493) as the amount allowed for his Ford, and under all the circumstances, I accept his testimony as the more worthy of belief. The salesman for the defendants attempted to explain why the transaction was reported to the Denver War Price and Ration Board showing Seven Hundred Fifteen Dollars ($715) to be the amount paid for the Ford. The explanation was that a Mr. Brady, a price clerk of the Denver War Price and Ration Board, had told them to report that they had paid the ceiling price for trade-ins regardless of the amount actually paid. This same salesman admitted to the Court upon questioning that he knew that that was not the proper way to do it. Both the purchaser and the defendants signed the reports to the Denver War Price and Ration Board. The purchaser said that he signed the statement of the transaction to be given to the OPA in blank, and the record as a whole would justify the conclusion that he did sign in blank. The salesman for the defendants testified that Four Hundred Ninety-three Dollars ($493) was the reasonable trade-in value of the Ford. Other experienced automobile dealers testified to the same effect. At least one of the other dealers admitted that if he had purchased the automobile for Four Hundred Ninety-three Dollars ($493), he would have expected and would have endeavored to sell the same for Seven Hundred Fifteen Dollars ($715) plus the Twenty-five per cent (25%) mark up by reason of giving a written warranty. That is exactly what was done by the defendants after having received the Ford. And it was sold to a purchaser who had made an inquiry concerning that particular type of car prior to the time it was received by the defendants. The Ford car was sold by the defendants for a total of Eight Hundred Ninety-three Dollars ($893). It is my conclusion from all the evidence, first, that the reasonable value of the Ford traded in was Seven Hundred Fifteen Dollars ($715), and it is my conclusion from all the evidence

that the trade was conducted by the defendants solely on a basis of Nine Hundred Dollars ($900) difference without regard to the ceiling price of said car and that this was a scheme for obtaining more than the allowed ceiling price for the Dodge sedan.

It is my conclusion from the evidence that a failure of the defendants to furnish a written warranty was the result of negligence rather than intentional. There is no good reason shown under the evidence why the defendant did not furnish a written warranty. A written warranty only warranted the car for the first thirty days or the first one thousand miles and required the defendant to make needed repairs at half price.

V. It was admitted at time of trial that the purchaser of the automobile in question had not brought any suit for recovery of any overcharge.

### Conclusions of Law

I. The Court has jurisdiction of the parties hereto and of the subject matter hereof.

II. That the defendants violated Section 7, Maximum Price Regulation 540, in failing to give to the purchaser a written warranty.

III. That the trade as effected by the defendants for a difference of Nine Hundred Dollars ($900) was a wilful evasion of the price regulation and resulted in an overcharge of Two Hundred Twenty-two Dollars ($222) as contended by the plaintiff.

IV. Defendants were not entitled to and did not rely upon the alleged advice of a clerk of the Denver War Price and Ration Board that it was unnecessary for them to certify the true amount for the allowance of the trade-in.

V. Plaintiff is entitled to judgment for damages in the sum of two overcharges, Two Hundred Seventy-eight Dollars and Seventy-five Cents ($278.75) and Two Hundred Twenty-Two ($222), or Five Hundred Dollars and Seventy-five Cents ($500.75) plus Two Hundred Forty-nine Dollars and Twenty-five Cents ($249.25) or a total of Seven Hundred Fifty Dollars ($750) by reason of such violations of the regulations.

The Clerk of the Court is directed to enter judgment against the defendants for a total of Seven Hundred Fifty Dollars ($750) and costs of this action upon receipt of and the filing of the foregoing Findings of Fact and Conclusions of Law.