## THOMAS v. PIONEER MOTORS, Inc.
### No. 14843.

Court of Civil Appeals of Texas.
Fort Worth.
May 9, 1947.

Rehearing Denied June 13, 1947.

326

Frank Massey, of Fort Worth, for appellant.

Bryan, Stone, Wade & Agerton and G. W. Parker, Jr., all of Fort Worth, for appellee.

SPEER, Justice.

This is an action brought by Versie Thomas, a colored woman, against Ward Motor Company, a corporation, to recover penalty and attorneys fees based upon alleged charges over ceiling prices on a second hand automobile sold by defendant to plaintiff, in violation of the Emergency Price Control Act of Congress as amended, 50 U.S.C.A.Appendix, § 901 et seq.

Plaintiff's petition presents two counts under which recovery is sought, first being predicated upon the theory that the sale was made upon the maximum ceiling price for the automobile "as is" without warranty by the seller. The second count, alternatively pleaded, is upon the maximum ceiling price under the dealer's warranty. The record indicates that the latter theory was the one upon which the case was tried. Plaintiff claimed an overcharge of $308.13 and sought recovery of three times that amount and attorneys fees. Subsequent to the sale and prior to trial defendant corporation had legally changed its corporate name to Pioneer Motors Incorporated, but for convenience we shall refer to the corporation as defendant.

The answer consisted of a motion to abate the suit because of plaintiff's coverture and community ownership of the automobile traded in; a general denial, a plea of good faith by defendant and the use of all practicable means to avoid violation of the law, and a suggestion of change of defendant's corporate name. The abatement was overruled on the ground that plaintiff had been divorced by a nunc pro tunc judgment of another district court, antedating this proceeding. No special issue was requested or given presenting the good faith of defendant and of course that issue went out of the case. Rule 279, Texas Rules Civil Procedure.

Stripped of many matters not considered material to the disposition we have concluded to make of this appeal, it appears that the fixed maximum ceiling price of the Buick car sold to plaintiff with seller's warranty was $1527.00, and that the seller could include and add to that price items of sale tax, license fee, and certain notary fees all aggregating $36.00, making the grand total of $1563.00. She could not pay

all cash and arranged with an auto finance company to carry the deferred amount; she executed a "Conditional Sales Contract" on the face of which is a purported detailed statement of the total amount promised to be paid for the Buick car purchased showing the amount including the $36.00 properly chargeable to her in the total sum of $1563.00. The conditional sales contract disclosed that the whole purchase price was paid and agreed to be paid in the following manner: A 1937 Studebaker car at $52.00; cash $761.00, totaling $813.00; a note for $952.50 disclosing the deferred balance unpaid on the car to be $750.00 and $202.50 of the note covering "Finance charges and insurance premium."

It is undisputed that defendant received from the finance company for a transfer of the note, $750.00. The total amount received by defendant from plaintiff, according to this instrument, was $1563.00, the established ceiling price plus the $36.00 properly chargeable.

The testimony of the respective parties does not coincide with the provisions of the conditional sales contract, except in the aggregate amount. The parties apparently agree that plaintiff paid in cash $790.00 and that defendant received from the finance company $750.00. Defendant took in the Studebaker car and credited the contract with $23.00, all aggregating $1563.00.

Defendant offered in evidence plaintiff's signed "Order for a Warranted Motor Vehicle" which provided for the total sales price of $1563.00 (which included the properly chargeable $36.00 items). This instrument showed the "trade-in" (Studebaker) at $23.00.

The ultimate and controlling issue in controversy in this case is, did the defendant charge and receive from plaintiff an amount in excess of the maximum ceiling price fixed by order of O. P. A. for the Buick automobile? This amount must be conceded to be $1527.00 plus $36.00 shown to be properly chargeable, or a total price of $1563.00. In finding an answer to the question we must look to what the seller did demand and receive in consideration for the sale. All concede that he received cash payment of $790.00 and $750.00 from the proceeds of the note, and the Studebaker car. Defendant contending that he took the Studebaker in at $23.00 and plaintiff contending that he agreed during negotiations to allow her $225.00 for the Studebaker as part payment on the Buick. If the facts were as contended by defendant there would be no overcharge, but if as plaintiff contends, an overcharge is obvious.

■ We think that in this particular transaction the reasonable market value of the Studebaker car is unimportant. If defendant agreed to allow $225.00 for it in this deal it is immaterial whether he made a good trade or a bad one. Neither the pleadings nor the testimony raised the question of its reasonable market value, nor was there any issue requested or submitted to the jury thereon. We do not see that question in this case.

We note plaintiff testified that she was dissatisfied with the $225.00 price defendant offered and proposed to buy the Buick and keep her Studebaker, but that defendant said he couldn't sell the Buick to her unless she traded. Mr. Ward for defendant denied all that part of her testimony and said that after his mechanic examined the Studebaker he told plaintiff he did not want it at all—for her to go out and sell it and come back; that she agreed to do this but came back and said she couldn't sell it and he then told her he would allow her $52.00 for it; plaintiff returned next day and had broken the clutch in the meantime and then Mr. Ward says he told her it would cost $26.00 to fix the clutch and that amount would have to come off what he had offered her the day before.

The Studebaker traded in by plaintiff stood in the name of her former husband Elijah Thomas. At the time the trade was closed, her son by the same name, at the request of his father, executed and signed as "Elijah Thomas" a certificate of transfer to defendant as required by O. P. A. regulations in which the "Actual sale price" was shown to be $23.00, following this figure was the footnote, "car wreck".

At the conclusion of the testimony defendant requested a peremptory charge to the jury in its favor, assigning as one of

the reasons for the request that the undisputed testimony showed there was no overcharge, and detailed the testimony upon which it relied. The requested charge was denied.

Court charged the jury in connection with special issues submitted, in effect as follows: The maximum ceiling price of the Buick car purchased by plaintiff was $1527.00; that sales tax, license fee and notary fees amounting to $36.00 were properly chargeable to plaintiff and that the unpaid cash balance to defendant, represented by the note signed by plaintiff, was $750.00. With these preliminary instructions the jury found in response to special issues, to which no objections were made by either party: (1) the defendant, at the time of sale of the car agreed to allow plaintiff $225.00 for the 1937 Studebaker; (2) Defendant charged plaintiff a price for the Buick automobile greater than the ceiling price allowed by O.P.A. regulations; (3) The overcharge was $173.00. (Following a charge to the effect that if they found an overcharge by defendant they could allow plaintiff an amount equal to three times the overcharge) in response to issue (4) the jury allowed plaintiff $519.00; and (5) Attorneys fees of $200.00.

Defendant thereafter timely filed its motion for judgment notwithstanding the verdict. Briefly stated, the reasons assigned in the motion were: Defendant's motion for an instructed verdict should have been given; the term "price" as used in the Emergency Price Control Act means "the consideration demanded or received in connection with the sale of a commodity." 50 U.S.C.A.Appendix, § 942(b). The price received in this case was, $790.00 cash, $750.-00 out of the note and the Studebaker car at $23.00; "The undisputed evidence shows that $23.00 was the allowance made by defendant for the trade-in." There could have been no overcharge unless the reasonable market value of the Studebaker was shown to more than $23.00. The testimony of plaintiff and her son that defendant agreed to take the Studebaker in at $225.-00 was not evidence of an overcharge in the absence of any evidence that the Studebaker had a reasonable market value of that amount; such evidence was without probative force because it was an attempt to vary the terms of the written purchase order by parol, and is a violation of the parol evidence rule. Similar reasons were assigned as to why each of the answers to the five special issues should be disregarded by the court.

The motion also contained a contention that the requested peremptory instruction should have been given because the undisputed testimony showed that the Studebaker car traded in belonged to plaintiff and her husband, as pleaded in the motion to abate. In view of the nunc pro tunc judgment in another court, which awarded to plaintiff this chose in action, and the testimony that the husband authorized the son "Elijah Thomas" to transfer the Studebaker car to defendant in the deal, the trial court must of necessity have disregarded this contention.

Trial court sustained the motion for judgment non obstante veredicto, entered judgment accordingly, from which action the plaintiff has appealed.

Points of error relied upon by plaintiff are in substance that the court erred in sustaining the motion for judgment non obstante veredicto and in declining to enter judgment for plaintiff on the verdict of the jury.

We have concluded that the errors complained of must be sustained. As above pointed out the controlling issue in the controversy here, is, did defendant demand and receive a price for the Buick car in excess of the maximum price fixed on such automobiles by the order of O. P. A.? The allowable price which defendant could receive for the Buick and the properly chargeable items placed on it by defendant were shown to be $1563.00. Plaintiff paid $790.00 in cash and $750.00 as proceeds from the note. Defendant contends that the remaining $23.00 was paid by transfer to it of the Studebaker, while plaintiff insists that while she did transfer the Studebaker to defendant, he was to allow her $225.00 for it in the deal.

This conflict in the testimony of the parties goes directly to the heart of the question of whether defendant received more than the maximum ceiling price for the

Buick. It can make no difference whether the Studebaker was really worth that amount or more; if they contracted on that basis, defendant's admission of that value would obviate the necessity of plaintiff proving it.

When, as in this case a jury trial is demanded, all controversies and conflicts in the testimony relating to material facts are to be determined by the jury in response to special issues. In this case, the jury resolved the disputed facts in favor of plaintiff. It is the settled rule in this state that where an instructed verdict is returned and the losing party complains, all testimony will be considered in its most favorable light to support his contentions. As previously pointed out, plaintiff and her son testified that defendant agreed to allow her $225.00 for the Studebaker in the purchase of the Buick and that defendant as positively denied it all. The jury believed plaintiff's theory and discarded that of defendant. The amount of $173.00 found by the jury to be the overcharge is less than would appear from a calculation of the admitted payments added to the jury findings of the agreed price of $225.00 for the Studebaker, but no complaint is made of this matter on appeal. Certainly defendant cannot complain because it is less.

50 U.S.C.A.Appendix, § 925 is the provision of the Emergency Price Control Act necessary for construction in controlling the rights of the respective parties here. We have been unable to find where any of our courts have construed its provisions in circumstances applicable to the question before us. Plaintiff, (appellant) in addition to her contention that the parties agreed that $225.00 would be allowed in the trade for the Studebaker, relies largely upon the contention that she established the overcharge by showing that the reasonable market value of the Studebaker was at least $225.00 and cites as authority to support her, Bowles, Adm'r. v. Murphy et al., D.C., 62 F.Supp. 295. In the first place that case was decided upon an entirely different state of facts to those before us; and second, as before pointed out, for lack of pleadings, proof and submission of issues, the question of "reasonable value" is not in this case. Plaintiff also argues "estoppel" as against defendant; estoppel was not pleaded nor was it submitted to the jury by request or otherwise, and neither is that question before us.

Defendant frankly admits it can find no precedent in any case under the applicable statute, in point here. In support of the judgment, defendant relies, in the main, upon the principles of the parol evidence rule. It insists that the plaintiff executed a written "Order for a Warranted Motor Vehicle" which provided that plaintiff agreed to pay defendant $1563.00 for the Buick car (which amount included the ceiling price of $1527.00 and $36.00 of properly chargeable items) and further provided for "Allowance of Trade-in" of $23.00. It is argued that the familiar parol evidence rule precluded plaintiff from testifying to a state of facts which tended to vary, add to or in any way alter the provisions of that written instrument; that such testimony though admitted by the court had no probative value and would lend no support to a judgment based thereon, and for this reason among others, the trial court properly disregarded the jury verdict based on the parol evidence, and entered judgment notwithstanding the verdict.

We are not in accord with these contentions. It is the settled law, that the parol evidence rule is not merely one of evidence or procedure but is one of substantive law. Evidence admitted in violation of the rule has no probative value and will not support a verdict by a jury. 17 Tex. Jur. 793, § 353.

From a consideration of the record as a whole in this case, we have concluded that the parol evidence rule is not applicable to the controversy here involved. In the first place, the application of the parol evidence rule presupposes the existence of a valid contract or instrument in writing purporting to cover the particular matters involved. 17 Tex.Jur. 833, § 378. In the second place, it must necessarily be conceded that the Studebaker automobile was traded in to defendant as a part of the consideration received for the sale of the Buick to plaintiff. It is the universally recognized rule of law that if the

330

consideration in a transaction is other than contractual, parol evidence is admissible to establish the real consideration, to explain such consideration as well also to show a want or failure of consideration. 17 Tex.Jur. 849, 853, §§ 385 and 387.

Bearing in mind the nature of the instant case under the cited Emergency Price Control Act, supra, we observe that defendant was a dealer engaged in selling and exchanging second hand automobiles under the restrictions and provisions of the governmental Administrator of the Act and to whom the defendant must account for each transaction had; that the evidence shows in this case that Mr. Ward, the head of the defendant corporation, either filled out or caused to be filled out the instrument designated by its counsel as the "Order for a Warranted Motor Vehicle" then and there executed by plaintiff. It could hardly be expected that defendant would either prepare or accept such an instrument prepared by someone else that would reveal upon its face that the Act had been violated when inspected by the Administrator. We think it a wholesome maxim in such cases as this to "Regard substance rather than form."

The principle here involved is not unlike our Texas laws concerning usurious contracts, although their vice may not be revealed in the writing. It has been held that parol evidence which tends to throw light upon the transaction and show its true character, is admissible upon the issue of usury, although the contract is in writing and appears upon its face to be fair and legal. It has been observed by the courts: "If the rule were otherwise, the cunning devices and schemes of usurers could never be exposed and the laws against his grasping avarice would remain a dead letter upon our statute books." 42 Tex.Jur. 986, § 86.

The Emergency Price Control Act does not preclude the purchaser of a commodity from paying a price greater than that fixed by the Administrator under some written form or device and thereafter recovering the penalty provided by the law against the seller.

Our final conclusions are that the evidence in this case fairly raised the issue of whether or not under the agreement between the parties, defendant agreed to allow plaintiff $225.00 for her Studebaker car in the deal, and if so that amount added to the other amounts admittedly received by the seller would ·exceed the maximum sales price allowed to be charged by defendant. These matters were submitted to the jury and the verdict was favorable to plaintiff. And in view of these things the trial court erred in disregarding the verdict and entering judgment for defendant.

Defendant, the appellee in this court, has not brought forward to this court in any form any such error committed by the trial court against it as would have prevented the affirmance of a judgment if such had been entered by the trial court in harmony with the verdict. And under authority of Rule 324, R.T.C.P.; LeMaster v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224; Perry v. Citizens Life Ins. Co., Tex.Civ.App., 163 S.W.2d 743, and Reid v. Associated Employers Lloyds, Tex.Civ.App., 164 S.W.2d 584, writ refused, it becomes our duty to reverse the judgment of the trial court and here render judgment on the verdict of the jury. Reversed and rendered.