## PIONEER MOTORS, INCORPORATED, V. VERSIE THOMAS.

No. A-1334. Decided December 10, 1947.
Rehearing overruled December 31, 1947.
(206 S. W., 2d Series, 591.)

*Bryan, Stone, Wade & Agerton,* and *G. W. Parker, Jr.,* all of Fort Worth, for petitioner.

*Frank Massey,* of Fort Worth, for respondent.

MR. JUSTICE FOLLEY delivered the opinion of the Court.

This suit was filed by the respondent, Versie Thomas, against the petitioner, Pioneer Motors, Inc., for treble damages and attorney's fees for the alleged overcharge in the sale of an automobile under the Emergency Price Control Act of Congress as amended, 50 U. S. C. A. App. Sec. 901 et seq. The total amount demanded exceeded $1,000.00.

The respondent purchased a 1941 Buick on the used-car lot of petitioner at the ceiling price of $1,527, as fixed by the office of Price Administrator, plus a properly chargeable item of $36.00 for sales taxes, license and notary fees, making a grand total of $1,563.00. Respondent traded in a 1937 Studebaker automobile as part of the consideration for the Buick. She paid petitioner $790.00 in cash. A note she executed netted petitioner $750.00 from a finance company. The balance of the purchase price in the sum of $23.00 was credited on the written purchase contract as an allowance for the Studebaker automobile.

The respondent contends that, notwithstanding the written recitals in the purchase contract, the parties orally agreed that the exchange value of the Studebaker was $225.00, which fact, she asserts, fixed its market value at that sum regardless of its actual market value. On the contrary, petitioner contends that the price of $23.00 was agreed upon as its exchange value, which, petitioner insists, was the actual market value of the automobile.

The only evidence offered or introduced as to the value of the Studebaker in the condition in which it was traded was that of the petitioner, which showed that it was only $23.00, the amount allowed for it in the written purchase contract. The respondent took the position that its actual market value was immaterial, and that the alleged parol agreement that its value was $225.00 was controlling.

At the conclusion of the evidence petitioner filed a motion for an instructed verdict which was based in part on respondent's failure to show that the market value of the Studebaker was in excess of the $23.00 actually allowed for it. The motion was overruled. The cause was thereupon submitted to a jury which found, in response to special issues, (1) that petitioner orally agreed to allow respondent $225.00 for the Studebaker; (2) that petitioner charged respondent a price for the Buick greater than the ceiling price allowed by OPA regulations; (3) that the overcharge was $173.00; (4) that three times that

amount, or $519.00, should be allowed respondent; and (5) that the further sum of $200.00 should be allowed respondent as attorney's fees.          ,

The petitioner filed a motion for judgment non obstante veredicto, in which it was urged, first, that there was no evidence as to any value of the Studebaker other than the $23.00 allowed in the written contract, and, secondly, that the testimony of the alleged oral agreement violated the parol evidence rule because it varied the terms of the written purchase contract. The trial court granted the motion, and entered judgment for petitioner notwithstanding the verdict.

The Court of Civil Appeals held that the question of the value of the Studebaker was immaterial, and that, since the jury determined there was an oral agreement to allow $225.00 for it, that finding established an overcharge regardless of its actual market value, and rendered judgment upon the verdict of the jury. 203 S. W. (2d) 325.

■ The term "price" as used in the Emergency Price Control Act is defined as the "consideration demanded or received in connection with the sale of a commodity." 50 U. S. C. A. Appendix, Section 942(b). The Studebaker was part of the consideration demanded and received in the sale of the Buick. To determine whether there has been an overcharge we must first find what was intended by the Administrator in issuing the price regulation which controls the transaction.

It was stipulated by the parties in the trial court that the sale of the Buick was controlled by the terms of Maximum Price Regulation Number 540. The material portions of that regulation are as follows:

"It shall be a violation of this regulation to charge a price above the applicable maximum price in connection with any sale of a used car, either alone or in conjunction with any other consideration even though the price increase appears only indirectly. Specifically, the seller is not permitted to require the purchaser, as a condition of the sale or transfer of the car, * * * to make payment in whole or in part by exchanging or transferring or trading in any other vehicle or other product or commodity, or where there is an exchange, transfer, or trade-in, to require him to accept an allowance for the vehicle, product or commodity exchanged, transferred or traded in which is below its reasonable value. * * *"

■ From the explicit terms of the order itself it appears that a violation of the regulation in instances of exchange arises only when the seller requires the purchaser to trade in the vehicle, product or commodity exchanged at an allowance "below its reasonable value." It therefore seems obvious that the reasonable market value of the Studebaker, and not an agreement with reference to it, is the determining factor in the alleged overcharge. Any other construction would defeat the very purpose of the regulation, and thereby permit persons to circumvent the order by fixing fictitious, fabulous or arbitrary values, rather than real values, on commodities traded or exchanged. It thus became the burden of the respondent to offer strict proof that the actual value of the Studebaker exceeded the $23.00 allowed for it. This the respondent failed to do, which omission entitled the petitioner to the instructed verdict and judgment non obstante veredicto, and renders immaterial the alleged violation of the parol evidence rule.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion delivered December 10, 1947.

Rehearing overruled December 31, 1947.