[Civ. No. 14667.   First Dist., Div. One.   Aug. 24, 1951.]

FREDERICK A. RAINEY, Appellant, v. ALLAN R. ROSS, Respondent.

James A. Johnstone and E. J. Rice for Appellant.

Carroll, Davis & Freidenrich and J. D. Burdick for Respondent.

WOOD (Fred B.), J.—Plaintiff Frederick A. Rainey brought this action to recover damages for injuries sustained by him when struck by a motor vehicle driven by defendant Beulah Maxine Hall.   He alleged that Hall and defendants

Lowell J. Herzog, Allan R. Ross, and Mrs. Allan R. Ross were the owners of the vehicle. Herzog and Mrs. Ross were served but defaulted. Hall was not served. Mr. Ross answered, denying all of the material allegations of the complaint.

The case was tried before the court without a jury. The court found that the accident occurred on June 22, 1945; that Rainey sustained personal injuries proximately caused by Hall in the operation of the vehicle; that, as a result of the negligence of Hall, Rainey was damaged in the sum of $4,653.34; that at the time of the accident the automobile was owned by Herzog and Mrs. Ross, and operated by Hall with their permission and consent, as their agent and within the scope of the agency; that Mr. Ross was not then the owner of the automobile, and that Hall was not his agent, servant, or employee. The court rendered judgment for plaintiff Rainey against Herzog and Mrs. Ross in the sum of $4,653.34 and costs of suit; that defendant Allan R. Ross have judgment against Rainey for his costs of suit. Plaintiff has appealed from that portion of the judgment which is against him and in favor of Ross.

The appeal presents the question whether or not respondent Ross was, at the time of the accident, the owner of the vehicle within the meaning of that term as used in section 402 of the Vehicle Code, which imputes to the owner the negligence of another person who uses or operates the vehicle with the permission, express or implied, of the owner.

Relevant to this inquiry, the court specifically found (upon evidence which supports the findings) that between March 1 and April 13, 1945, respondent sold and delivered possession of the vehicle to Herzog, receiving the consideration therefor; that it was a bona fide sale and transfer; that at the same time he made proper endorsement of the certificate of ownership and delivered the certificate to Herzog; that prior to the sale respondent had been the legal and registered owner of the vehicle; that at the time of the sale the certificate of registration was not in the possession of respondent; that it was then in the possession of the State Department of Motor Vehicles, to which it had been sent by respondent in connection with his application for renewal of registration of the vehicle for the year 1945, and a new certificate of registration had not been returned to him; that respondent received his 1945 certificate of registration from the department several days after the accident, and he then and there mailed it to Herzog at

the latter's address;[*] and that respondent did not either deliver or mail to the Department of Motor Vehicles a notice of the sale of the vehicle or the certificates of ownership and registration pursuant to said sale. The records of the State Department of Motor Vehicles, in evidence, indicate that neither the certificate of ownership nor the 1945 certificate of registration was delivered or mailed to the department until a considerable length of time after the accident. According to those records, Mr. Ross was the legal and registered owner of the vehicle at the time of the accident.

Appellant contends that at the time of the accident, June 22, 1945, respondent was still the "owner" of the vehicle within the meaning of that term as used in section 402 of the Vehicle Code. He predicates this contention upon the fact that respondent chose one of several methods which the law accorded him, when selling a vehicle, to terminate his imputed liability for subsequent negligent operation, and, assertedly, ineffectually complied with that method because he did not, prior to the accident, deliver to the buyer the certificate of registration in addition to the vehicle and the endorsed certificate of ownership, despite the impossibility of delivering the certificate of registration, which was then in the possession of the Department of Motor Vehicles. In this connection, appellant directs attention to the fact that the law did not impose an impossibility in this regard, for it accorded respondent an alternative method of terminating liability under section 402, that of delivering the vehicle to the buyer and delivering or mailing to the department a notice of the sale, giving the date of the sale, the names and addresses of the owner and the transferee, and a description of the vehicle.

Appellant is correct in his contention. The statutes applicable in 1945 were sections 186, 178, and 177 of the Vehicle Code. The pertinent provisions of section 186 read as follows: "(a) No transfer of the title or any interest in or to a vehicle registered hereunder shall pass and any attempted transfer shall not be effective unless and until the parties thereto have fulfilled either of the following requirements:

---

*Appellant's argument is predicated, in part, upon the assumption that Ross received the new certificate of registration before the accident occurred. Ross did testify that he thought he received it about June 19 or 20, 1945. But he also testified that his wife had a letter on the 21st asking for the white slip, and that as soon as he got the white slip back on his renewal it was sent to Herzog, mailed after the accident but before Ross knew about the accident.

(1) The transferor shall have made proper endorsement and delivery of the certificate of ownership and delivery of the registration card to the transferee as provided in this code and the transferee has delivered to the department or has placed in the United States mail, addressed to the department, such certificate and card when and as required under this code with the proper transfer fee and thereby makes application for a transfer of registration except as otherwise provided in Section 180, or (2) The transferor shall have delivered to the department or shall have placed in the United States mail addressed to the department the appropriate documents for the registration or transfer of registration of such vehicle pursuant to such sale or transfer except as provided in Section 178.'' (Stats. 1943, ch. 1129, p. 3072.)

It is apparent that if the seller relies upon the method of transfer prescribed by subdivision 1 of section 186 he depends upon the buyer to complete the transaction. In the instant case the buyer did not complete the transaction prior to the accident. He neither delivered nor mailed any of the documents to the department prior to the accident. If in this case the seller had sought to avail himself of the provisions of subdivision 2 of section 186 by delivering or mailing the ''appropriate documents'' directly to the department, he might be in a position to invoke his prior delivery of the certificate of registration to the department as delivery of one of the appropriate documents, a question not involved upon this appeal because the seller did not deliver or mail any document to the department pursuant to this sale.

The concluding clause of subdivision 2 of section 186 expressly recognized the several methods accorded by section 178 to a seller for terminating the further application to him of the provisions of section 402 in respect to imputed liability for negligent operation of the vehicle by any other person thereafter. Section 178 read as follows: ''An owner who has made a bona fide sale or transfer of a vehicle and has delivered possession thereof to a purchaser shall not by reason of any of the provisions of this code be deemed the owner of such vehicle so as to be subject to civil liability for the operation of such vehicle thereafter by another when such owner in addition to the foregoing has fulfilled either of the following requirements: (1) When such owner has made proper indorsement and delivery of the certificate of

ownership and delivered the certificate of registration as provided in this code. (2) When such owner has delivered to the department or has placed in the United States mail, addressed to the department, either a notice as provided in Section 177 or appropriate documents for registration of such vehicle pursuant to such sale or transfer.'' (Stats. 1941, ch. 1053, p. 2719 at 2720.) In respect to the notice (recognized as an alternative method by section 178), the pertinent provisions of section 177 prescribed that ''Whenever the owner of a vehicle registered hereunder sells or transfers his title or interest in, and delivers the possession of, said vehicle to another, said owner shall immediately notify the department of such sale or transfer giving the date thereof, the name and address of such owner and of the transferee and such description of the vehicle as may be required in the appropriate form provided for such purpose by the department.'' (Stats. 1935, ch. 27, p. 93, at p. 115.)

By the provisions of sections 178 and 177 the law accorded a bona fide seller, who delivered the vehicle to the buyer, three optional methods of terminating potential future liability under section 402. Two of them (delivery or mailing to the department, by the seller, of the notice or the appropriate documents) would give the state adequate information concerning the transfer that was in process, information which would be available to all who might have occasion to inquire. Respondent chose neither of these methods. The third optional method (delivery of both certificates, one of them endorsed, by the buyer to the seller) was the option which respondent chose to exercise. But he did not comply with the requirements under that option. He merely endorsed and delivered the certificate of ownership, did not deliver the certificate of registration. The impossibility of then delivering the certificate of registration to the buyer, because it was in the possession of the state pursuant to renewal of registration requirements, is of no significance. For the policy of the law in according a seller this method of avoiding future liability under section 402 was that of clothing the buyer with certain indicia of ownership,—possession of the vehicle and both certificates, one of them properly endorsed. When a seller complied with these three requirements the law immediately imposed upon the buyer the duty of completing the transaction by forwarding to the state, within 10 days, both certificates, the proper transfer fee, and his application for a transfer of registration (Veh.

Code, § 179.) ▮ Without possession of the certificate of registration the buyer lacked the indicated indicia of ownership, owed no duty of consummating the transaction of record, and the seller continued as "owner" for the purposes of section 402 as well as for other purposes. ▮ Nondelivery of the certificate of registration, from whatsoever cause, operated as a failure to meet the several requirements of the option which respondent chose to exercise. His inability to comply with those requirements did not prevent him from accomplishing the desired objective. He could have given the state the notice prescribed by section 177.* Indeed, if he had performed the duty imposed upon him by that section, he would have given timely notice to the state and would have terminated future liability under section 402.

The code sections we have discussed represent and effectuate a thoughtfully evolved plan and procedure concerning the transfer and recordation of transfer of motor vehicles used upon the public highways, in aid of a policy to protect innocent purchasers and to afford identification of vehicles and persons responsible in cases of accident and injury, all in the interest of the public welfare. (See *Henry* v. *General Forming, Ltd.*, 33 Cal.2d 223, 227 [200 P.2d 785], and *Larson* v. *Barnett*, 101 Cal.App.2d 282, 286 [225 P.2d 297], and cases cited.) As said by the Supreme Court in 1924, "The nature of motor vehicle traffic requires that there be a more certain *indicia* of ownership than mere possession for the protection of the general public in case of accidents or violations of the law and to prevent fraud upon innocent purchasers. In order to effectuate this purpose registration and indentification of motor vehicles is required." (*Parke* v. *Franciscus*, 194 Cal. 284, 292 [228 P. 435].) The plan has evolved into a well ordered system of motor vehicle title registration, and the regulation of ownership rights and duties upon the basis of such registration.

The Legislature began developing this plan as early as 1905, when it provided for registration of motor vehicles (Stats. 1905, ch. 612, p. 816). By 1919 the plan had been enlarged to affect civil rights and liabilities relating to vehicle ownership, through the medium of registration of transfer

---

*It is unnecessary to decide, and we do not decide, whether or not the other option accorded by subdivision (2) of section 178 (delivery or mailing of the "appropriate documents" to the department) was also available to respondent, he having already delivered one of those documents, the certificate of registration, to the department.

requirements. (Veh. Act of 1915, § 8, as amended by Stats. 1917, ch. 218, p. 382, at 388-392, and by Stats. 1919, ch. 147, p. 191, at 199-202.) In 1929 the owner's imputed liability statute was enacted (Stats. 1929, ch. 261, p. 566). In 1931 the Legislature added section 45¾ to the California Vehicle Act, requiring the owner to give the state immediate notice of the sale of a vehicle, and to permit him to avoid future responsibility under the imputed liability statute by delivering the vehicle and the certificate of ownership, properly endorsed, to the buyer (Stats. 1931, ch. 1026, p. 2099, at p. 2105), provisions which by 1945 had evolved into those now appearing in sections 177 and 178 of the Vehicle Code. Meanwhile, by amendment of section 178, the Legislature imposed the duty to deliver the certificate of registration (in addition to the vehicle and the endorsed certificate of ownership) if a seller desired to avoid future liability under section 402 by exercising the option given him by subdivision (1) of section 178 (Stats. 1941, ch. 1053, p. 2719 at p. 2720). The conclusion is inescapable that that subdivision means exactly what it says, and that failure to deliver the certificate of registration inevitably resulted in a failure properly to exercise that option.

Respondent directs attention to section 182.1, added to the Vehicle Code in 1947, and contends it is in effect an implied amendment of section 178, dispensing with the otherwise required delivery, from seller to buyer, of the certificate of registration when the latter is already in the possession of the Department of Motor Vehicles for an annual renewal of registration. He recognizes that this 1947 enactment came too late to be operative in 1945, but urges it as an interpretation of the intent of the Legislature when it added the delivery of the registration certificate requirement to section 178 in 1941. The weakness of this contention inheres in the fact that section 182.1 says nothing of the kind. It deals with a quite different subject. It simply declares that the department may transfer the registration of a vehicle upon production of certain documents without production of the registration certificate, if the department already has that certificate in its possession upon application for renewal of registration. That is far from saying that a seller may, in such a case, satisfy the requirements of subdivision 1 of section 178 and insulate himself from section 402 without delivering the certificate of registration to the buyer.

Respondent advances the further argument that his was

not a "registered" vehicle at the time of this sale, in view of the expiration of the 1944 registration and the delayed consummation of the 1945 registration; that sections 186 and 178 of the Vehicle Code apply only to "registered" vehicles; and that his delivery of the vehicle and the endorsed certificate of ownership, upon receipt of the sale price, effected a transfer of title to the buyer under the provisions of the general laws applicable to an unregistered vehicle, viewed as a tangible piece of personal property not enmeshed in the motor vehicle registration system.

This argument is ingenious but not convincing. The answer is furnished by the applicable provisions of the Vehicle Code. When the Department of Motor Vehicles determines that an applicant is entitled to registration of a vehicle, it "shall register the vehicle . . . and keep a record thereof . . ." (Veh. Code, § 150) and "issue a certificate of ownership to the legal owner and a registration card" (§ 151), and license plates or devices (§ 156). "Every vehicle registration . . . and every registration card issued . . . shall expire at midnight on the thirty-first day of December of each year and shall be renewed annually," but certificates of ownership are not annually renewed, remaining "valid until suspended, revoked or canceled . . . for cause or upon a transfer . . ." (§ 159). Application for renewal must be made "by the owner" between January 1 and February 4, by presenting "the registration card last issued" and "payment of the full annual fee for such vehicle" (§ 160), and, when so made, the "vehicle may be operated on the highways" until the new indicia of current registration "have been received from the department" (§ 161). Upon renewing a registration, the department issues a new registration card and new license plates or devices to the owner (§ 164).

When a person's vehicle is registered for a given year (as was respondent's in 1944) and he observes these re-registration requirements for the ensuing year (as did respondent in 1945), there is no period of time during which the vehicle is not "registered." The registration of his ownership continues of record until appropriate information of a transfer reaches the department. The hiatus that occurs incident to the imposition and payment of the annual license fee, checking of appropriate records in the department, and the issuance of the new registration card and the new license plates or devices, is more seeming than real. There is nothing unreal about the payment of the "full annual fee." When,

as here, timely application for annual renewal is made, it all relates back to the beginning of the year. We conclude that, at all times here involved, respondent's was a vehicle "registered hereunder" within the meaning of that term as used in section 186 of the Vehicle Code. In view of this conclusion, it is unnecessary to consider the question whether the provisions of section 178 apply only to a registered vehicle or to any motor vehicle, registered or not, that is operated upon a highway.

The portion of the judgment appealed from is reversed.

Peters, P. J., and Bray, J., concurred.