Alberta RUSH et al., Appellants,

v.

Earl SMITHERMAN et al., Appellees.

No. 13030.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 10, 1956.

Rehearing Denied Nov. 7, 1956.

Lloyd & Lloyd, Alice, for appellants.

Perkins, Floyd & Davis, Kenneth Oden, Alice, Blakeley & Williams, Dallas, for appellees.

POPE, Justice.

The question presented by this appeal is whether the law of negligent bailment of motor vehicles to unlicensed drivers should be broadened to embrace a doctrine of negligent sales or contracts to sell new or used cars to unlicensed drivers. The trial court refused to extend the doctrine of negligent entrustment and sustained the defendants' motion for summary judgment.

Plaintiffs are the widow, children and parents of Kelton E. Myers, who was killed in an automobile collision with a car driven by Humberto Munoz. Munoz is not a party to this suit, for he was dismissed before judgment was rendered. They sued Earl Smitherman, individually and d/b/a Smitherman Motor Company and Texas Motor Company, and Joseph W. Spillar, individually and d/b/a Texas Motor Company. Munoz contracted to buy a car from Texas Motor Company. That Company was owned by Earl Smitherman and Joseph W. Spillar. Earl Smitherman was the sole owner of Smitherman Motor Company and Spillar was its manager. The

motion for rehearing convinces us that the judgment of the trial court was correct, and we withdraw the former opinion.

Munoz was an employee of Smitherman Motor Company, but plaintiffs make no contention that liability is grounded upon agency. The showing was made by depositions and one affidavit. Rule 166–A, Texas Rules of Civil Procedure. Looking alone to Munoz's deposition, and not to Spillar's, we find certain undisputed facts: A few days before December 12, 1953, Spillar permitted Munoz to drive a Cadillac car home from work. Prior to December 12th, Munoz had no agreement to buy the car, but on that date his relations were altered. Munoz and Spillar then made an agreement under which Munoz became the purchaser of the car. They agreed that Munoz would buy the car for $175. Under their agreement, Munoz was to pay $50 as a down payment and some money every week until the car was paid for. When Munoz received his next pay check, he paid $25 on the car, and agreed that he would pay another $25 out of his next check. That arrangement, as of that time, was entirely agreeable to both the buyer and seller. The parties executed no written agreement, and made no agreement about the time for delivery of the certificate of title. After the agreement between Spillar and Munoz, Munoz had complete control and possession of the vehicle. The seller then lost his control and possession. What was formerly a mere bailment became a firm contract to sell as between the parties. About six days after that relationship was established between the parties Munoz had the accident. He did not have a driver's license. Munoz defaulted on his agreement after the accident date, but on the date of the accident, under his contract with the seller, he and no one else controlled and had the sole right to control the car.

 Upon these facts, Munoz made a contract to buy the vehicle and the seller accepted part payment and delivered possession. This was a contract to sell.

Alamo Cas. Co. v. William Reeves & Co., Tex.Civ.App., 258 S.W.2d 211, 214; Hicksbaugh Lumber Co. v. Fidelity & Casualty Co. of New York, Tex.Civ.App., 177 S.W. 2d 802; Elder Chevrolet Co. v. Bailey County Motor Co., Tex.Civ.App., 151 S.W. 2d 938, 942. A contract to sell without delivery of the certificate is not illegal as between the parties. Gregory v. Laird, Tex.Civ.App., 212 S.W.2d 193, 195; Hicksbaugh Lumber Company v. Fidelity & Casualty Co., supra; Fulcher v. Hall, Tex. Civ.App., 170 S.W.2d 321.

 One who bails his vehicle to an unlicensed driver may be negligent under the doctrine known as negligent entrustment. This is the rule at common law. Note, 168 A.L.R. 1364. It also may be the rule by force of a statute, as in Texas. Mundy v. Pirie-Slaughter Motor Co., 146 Tex. 314, 206 S.W.2d 587. The rule of negligent bailments at common law does not embrace sales of vehicles. The Supreme Court in the Mundy case states that the Texas rule is in accord with the unanimous holdings in other jurisdictions. Upon inspection, those holdings concern bailments of different kinds. The Restatement applies the rule to those who "supply" chattels "for the use" of another. Restatement, Torts, § 390. No mention is made of sellers, and the illustrations are those of bailments only. Texas has not yet adopted the rule that vendors of new and second-hand cars are reached by the rule of negligent bailments.

 Courts have consistently refused to impose liability upon a negligent donor for the negligence of the donee and have so refused in cases which, had the transaction been a bailment rather than a gift, would have clearly imposed liability. In Estes v. Gibson, Ky, 257 S.W.2d 604, 606, 36 A.L.R.2d 729, a mother gave an automobile to her adult son addicted to alcohol and drugs. Recognizing the difference between a bailment and a gift the Court said:

"But this case is different. The alleged unfit and negligent driver of

the car was the sui juris owner. * * * There was no legal relationship, such as agency, bailment or the like, even in their broadest aspect. The vicarious legal liability of one person for the tortious conduct of another in which the former had no part ordinarily must rest on some such relationship. But this case rests on primary fault in the mother. To place responsibility upon a donor of an automobile to one who may or may not on a particular occasion be incapacitated to drive it could lead to placing such responsibility also upon the seller of a car to such person, or even upon one who sold him the gasoline being used to operate it."

An effort to extend the doctrine was made in Palmer v. R. S. Evans, Jacksonville, Inc., Fla., 81 So.2d 635, 637, but the Court there stated concerning a conditional sale arrangement:

"In the case at bar, the parties intended to enter, did enter, and ultimately memorialized in writing, a conditional sales contract, in which title was retained by the seller until the completion of payment. Thus legal title to the automobile remained in the seller, R. S. Evans, at the time the accident occurred. But the rationale of our cases which impose tort liability upon the owner of an automobile operated by another * * * would not be served by extending the doctrine to one who holds mere naked legal title as security for payment of the purchase price. In such a title holder, the authority over the use of the vehicle which reposes in the beneficial owner is absent. * * * Moreover, in jurisdictions having statutes making the owner liable for the negligence of another driving his car with his consent, the term 'owner' has been universally construed to eliminate those who hold nothing more than naked legal title. See Craddock v. Bickelhaupt, 227 Iowa 202, 288 N.W. 109,

135 A.L.R. 474, and the cases cited in annotation, 135 A.L.R. 481, 485–486. It is therefore apparent that it was necessary for appellee in the case before us to prove only that the beneficial ownership had passed to Hughes before the accident occurred and, as we have indicated above, the proof was adequate upon this point."

The rule, as stated, is consistently followed in other jurisdictions. Shipp v. Davis, 25 Ala.App. 104, 141 So. 366; Bugle v. McMahon, 265 App.Div. 830, 37 N.Y.S. 2d 540; Dempsey v. Frazier, 119 Miss. 1, 80 So. 341; Gott v. Scott, La.App., 199 So. 460. We conclude that liability for negligently entrusting a vehicle to an unlicensed driver is a part of the law of bailments, but not of the law of sales or gifts. See 6 Am.Jur., Bailments, § 314.

The Texas Statutes have not extended the rule to include sales. Article 6687b, § 36, Vernon's Ann.Civ.Stats., provides that "No person shall authorize or knowingly permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized hereunder or in violation of any of the provisions of this Act." One of the provisions of the act is the requirement that operators have a license. Sec. 2, Art. 6687b. By statute, Texas has stated the general rule. Nothing about the statute indicates that it purposed an extension of that rule. In Mundy v. Pirie-Slaughter Motor Co., supra, [146 Tex. 314, 206 S.W. 2d 591], the Court states that the object of the rule was to prevent the "lending of automobiles to persons not shown by examination and license to be competent to drive". In Ingram's Adm. v. Advance Motor Co., 283 Ky. 87, 140 S.W.2d 840, 841, a statute imposed liability upon an "owner". The title of the act, Acts 1936, 3rd Ex. Sess., c. 13, stated that one of its purposes was to make the "'owner liable for negligence of a minor'". This language is the closest to that used in the Texas statute we have found. The Court said, "Neither the title nor the section makes reference to a

dealer, or one who sells a motor vehicle." Thus, the Court refused to extend the tort liability into the field of sales. See Tanis v. Eding, 274 Mich. 288, 264 N.W. 375. Good reason exists for this as appears from the common law rule. A bailor entrusts, for what he entrusts is his. But a vendor does not entrust; he sells his chattel. The statute states that no person "shall authorize or knowingly permit" certain use of a vehicle. When the accident occurred in this case, Munoz was not driving the vehicle by force of authority or permission from any one. Munoz, when he got in his car to drive, needed no authority or permission from any one. He was driving a car which was his under a contract to buy. So long as he kept his payments in order, and he had up to that time, he, not others, was the one who granted the authority and permission about the car.

■ Our next inquiry is whether the Certificate of Title Act alters this rule. That law requires a transfer of the certificate upon the sale of an automobile. Art. 1436-1, § 33, Vernon's Ann.Penal Code. Section 53 provides: "All sales made in violation of this Act shall be void and no title shall pass until the provisions of this Act have been complied with." Appellants, plaintiffs below, reason that there would be no transfer without the surrender of the certificate, and therefore, despite the contract to sell, defendants were the owners of the car at the time of the accident and covered by Article 6687b, § 36.

The Certificate of Title Law may not be so used. It is a law of property, not of negligence. This is manifested in the clear statement of intent in its first section: " * * * it is hereby declared to be the legislative intent and public policy of this State to lessen and prevent the theft of motor vehicles * * * and the importation into this State of, and traffic in, stolen motor vehicles * * * and the sale of encumbered motor vehicles * * * without the enforced disclosure to the purchaser of any and all liens for which any such

motor vehicle * * * stands as security, and the provisions hereof, * * * are to be liberally construed to that end." The imposition of a new negligence duty upon vendors of new and second-hand automobiles was not one of the declared objectives of the law. Bank of Atlanta v. Fretz, 148 Tex. 551, 226 S.W.2d 843, 849.

■ Adhering to the declared purposes announced by Section 1 of the law itself, and even in the face of the express statement of Sections 33 and 53, that all sales without the transfer of the certificate shall be void, many cases have recognized the validity of sales between the parties, though no transfer was made. In National Auto. & Cas. Ins. Co. v. Alford, Tex.Civ.App., 265 S.W.2d 862, a dealer made an agreement to sell a vehicle, delivered possession, accepted part payment and notes. A third party insurer urged that the seller's failure to deliver the certificate to the buyer prior to an accident kept the buyer from being the owner. After quoting the declared purpose of the Certificate of Title Act, the Court held that the buyer had the title and was the equitable owner. Similarly, in Hicksbaugh Lumber Co. v. Fidelity & Casualty Co. of New York, Tex.Civ.App., 177 S.W.2d 802, looking again to the purposes declared in the Act, the Court held that a failure to transfer the certificate would retain the naked title in the seller, but the equitable title and interest would pass to the buyer. So, despite the failure to transfer the certificate and the Act's declaration that the non-transfer will render the sale void, as between the parties and when the purposes of the Act are not defeated, the sale is valid. Pioneer Mut. Compensation Co. v. Diaz, 142 Tex. 184, 177 S.W.2d 202; Knops v. Ordorica, Tex.Civ.App., 242 S.W. 2d 454; Manning v. Miller, Tex.Civ.App., 206 S.W.2d 165. The failure to deliver the certificate does not destroy one's rights and ownership in a vehicle in many other situations. See Guinn v. Lokey, 151 Tex. 260, 249 S.W.2d 185; Pacific Finance Corp. v. Crouch, Tex.Civ.App., 243 S.W.2d 432;

Elder Chevrolet Co. v. Bailey County Motor Co., Tex.Civ.App., 151 S.W.2d 938.

■ Liability upon a seller is imposed by certain precedents from California, but we note that, unlike Texas, the imposition of liability is authorized by statute. West's Ann.Vehicle Code, § 402. The statute also provides the steps a seller may take to free himself of continuing liability for the negligence of the purchaser. West's Ann. Vehicle Code, § 178. If thought desirable, an Act of the Legislature, as is the case in California, is the appropriate way to extend liability to a seller. See Rainey v. Ross, 106 Cal.App.2d 286, 235 P.2d 45, 48.

We conclude that the seller delivered the control and possession of the vehicle to Munoz, and accepted part payment upon the agreed purchase price. The seller retained the naked legal title so long as the certificate was not transferred. Nevertheless, Munoz was not an agent or bailee of the seller. He was a purchaser. As between seller and purchaser, when the accident occurred, the seller had no right to possess or control the car. We have found no authority which supports the idea that a seller should be held liable in tort for his purchaser under a conditional sales contract or, as here, under a contract to sell. The Certificate of Title Act was never intended to enlarge the tort liability of a seller, and we are convinced the common law imposes no such liability upon the naked title owner of vehicles.

The motion for rehearing is granted, the former opinion is withdrawn and the judgment is affirmed.

MURRAY, Chief Justice (dissenting).

I do not concur in the opinion of the majority granting appellees' motion for a rehearing, setting aside our judgment reversing the judgment of the trial court and now affirming that judgment.

I adhere to all that was said in our original opinion and in addition thereto I will further state my reasons for dissenting.

It will be borne in mind that this was a summary judgment in which the burden of proof was upon appellees to conclusively establish that they were not liable under the doctrine of negligent entrustment of an automobile to an incompetent driver, as it exists in Texas. Section 36 of Art. 6687b, Vernon's Ann.Civ.Stats.; Frontier Theatre v. Whisenant, Tex.Civ.App., 291 S.W.2d 395. The summary judgment was based upon the motion of appellees for a summary judgment in which depositions on file in the case were made a part of the motion, and appellants' reply, with the affidavit of one Charles Edward Rush attached thereto as Exhibit A. Appellees undertook to introduce in evidence parts of the depositions and to have certain other parts excluded, but this procedure was improper after the entire depositions had been made a part of their motion for a summary judgment.

Appellees sought to escape liability on the ground that they did not own the 1939 Cadillac on December 18, 1953, the date of the collision, as they allegedly had previously sold it to Munoz on December 12, 1953. Under Spillar's testimony, if a sale took place on December 12, 1953, it was a void and illegal sale, as there was no intention on his part to transfer the certificate of title to Munoz at the time of the sale. This was to be done only after Munoz had finished paying for the Cadillac, which was to take him some time. Sections 33 and 53, Art. 1436–1, Vernon's Ann. Penal Code; Elder Chevrolet Co. v. Bailey County Motor Co., Tex.Civ.App., 151 S.W. 2d 938; Commercial Credit Co. v. American Mfg. Co., Tex.Civ.App., 155 S.W.2d 834; Giles v. Lehman, Tex.Civ.App., 163 S.W.2d 720; Fulcher v. Hall, Tex.Civ. App., 170 S.W.2d 321; McKinney v. Croan, 144 Tex. 9, 188 S.W.2d 144; Reeb v. Danley, Tex.Civ.App., 221 S.W.2d 579; Deahl v. Thomas, Tex.Civ.App., 224 S.W. 2d 293; Associates Inv. Co. v. National

City Bank of Waco, Tex.Civ.App., 231 S.W.2d 661. Appellees will not be permitted to plead their own void and illegal acts as a defense to appellants' cause of action.

The facts testified to by Spillar in his deposition, at most show a *contract to sell* an automobile, which passes no title and would leave appellees the owner of the 1939 Cadillac. Alamo Cas. Co. v. William Reeves & Co., Tex.Civ.App., 258 S.W.2d 211; Elder Chevrolet Co. v. Bailey County Motor Co., Tex.Civ.App., 151 S.W.2d 938; Giles v. Lehman, Tex.Civ.App., 163 S.W. 2d 720; Davis v. Gonzales, Tex.Civ.App., 235 S.W.2d 221; Onwiler v. Burtrum, Tex. Civ.App., 236 S.W.2d 157; Willingham v. Fidelity & Casualty Co. of N. Y., Tex. Civ.App., 288 S.W.2d 884.

There are several reasons why the testimony of appellees given in their depositions did not conclusively establish their non-liability and entitle them to a summary judgment in their favor. In the first place, the record shows that the certificate of title to the 1939 Cadillac was held by appellees and had never been transferred to Munoz. The testimony of Spillar, one of the appellees, to the fact that he had made a verbal sale of the Cadillac to Munoz could do no more than raise the issue of a sale to be weighed by the trier of facts and therefore only raises a fact issue. It is far from being conclusive, as is required to support a summary judgment. Helmuth v. Frame, 46 Cal.App.2d 372, 115 P.2d 846.

In the second place, Spillar's testimony was contradicted by Munoz, a co-defendant, and thus it is obvious that only a fact issue was raised. Furthermore, Rush in his affidavit stated that immediately after the accident Spillar in effect had stated that the Cadillac belonged to appellees. Under such circumstances appellees fell far short of establishing conclusively that they did not own the 1939 Cadillac at the time of the collision. The evidence conclusively shows that appellees did turn the possession of

the Cadillac over to Munoz, and that Munoz did not have a driver's license. There was no attempt to show that Munoz was not negligent, and it is not conclusively shown that appellees did not know that Munoz did not have a driver's license, or that by using due diligence they could not have ascertained such fact. Frontier Theatre v. Whisenant, Tex.Civ.App., 291 S.W.2d 395. Appellants, in my opinion, were clearly entitled to have their case heard upon its merits and the question of entrustment should have awaited the proof.

The majority seem to give great importance to the fact that there is testimony to the effect that Spillar delivered possession of the Cadillac to Munoz at the time he entered into the oral agreement concerning the sale. This testimony is far from conclusive. In addition to coming from an interested party, it is contradictory within itself. In one place Spillar says he gave possession the day before the sale agreement. Munoz says he got possession of the Cadillac in the middle of the week, to be used in going to and from his work, before the conversation as to the sale took place on Saturday. But even if possession had been given at the time the contract *to sell* was made, it still would not change the ownership, and appellees would remain the owners. Willingham v. Fidelity & Casualty Co. of N. Y., Tex.Civ.App., 288 S.W.2d 884.

The majority discuss the effect of sales, gifts and conditional sales upon the doctrine of negligent entrustment, but all of this is rendered immaterial by the finding that the transaction here relied upon by appellees was only a contract *to sell* the Cadillac. I readily agree that the doctrine of negligent entrustment as it exists in this State cannot be based upon a sale, a gift, or a conditional sale of a motor vehicle to an incompetent driver, but I do contend that the fact that the owner has entered into an oral agreement *to sell* a motor vehicle to an incompetent driver will not excuse him for negligently entrusting it to such incompetent driver,

880

pending the completion of the oral agreement to sell such motor vehicle to him.

The majority state that only the testimony of Munoz is considered, but in my opinion the conflict between the testimony of Munoz and Spillar and Rush should be considered in determining whether a genuine issue of fact was raised by all the testimony.

In my opinion the judgment of the trial court should be reversed and the cause remanded, as was done in our original opinion and judgment.