**Otila M. SALINAS, Individually and as Personal Representative of the Estate of Rosendo Salinas, and Mary Ann Sanchez, Appellants,**

**v.**

**GENERAL MOTORS CORPORATION, Appellee.**

**No. 01–92–01000–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

June 24, 1993.

J. Micheal Solar, Houston, for appellants.

James B. Sales, Terriann Trostle, Houston, for appellee.

Before COHEN, O'CONNOR and JUNELL,* JJ.

## OPINION

COHEN, Justice.

This is an appeal from a summary judgment granted in favor of General Motors Corporation (GM) in a wrongful death and survival action. We must decide whether GM can be liable for injuries caused by an elderly bad driver because GM did not warn the driver, or instruct the dealer, about dangers posed by elderly, impaired drivers. We hold GM had no duty to warn or instruct; therefore, we affirm.

While driving a new car manufactured by GM, 89–year–old Lena Simpson struck and killed Rosendo Salinas. Appellants sued GM, Flowers Motor Company (Flowers Motor), the car dealer, John Braunsdorf, the salesman, and Simpson's estate.

The trial judge granted summary judgment and a severance for GM. At trial, the jury found Flowers Motor and Braunsdorf did not negligently sell the car to an incompetent driver, and found Simpson 100 percent responsible for the accident. That judgment is not before us. This appeal concerns only GM's summary judgment.

Appellants alleged theories of negligence, strict tort liability, breach of express and implied warranties, and false representations. They contended the car was defectively marketed, i.e., that GM should have prevented its dealers from selling its vehicles to incompetent drivers like Simpson.

GM moved for summary judgment on each theory pled, asserting: 1) Appellants failed to state a claim against GM for negligently selling a vehicle; 2) there was no liability against GM under a strict liability theory of marketing defect; 3) GM did not cause the injury; 4) there was no design or manufacturing defect; 5) there was no breach of an express or implied warranty; and 6) GM was not liable under the RE-STATEMENT (SECOND) OF TORTS § 402B.

The summary judgment was granted on all grounds in a general order. We review the summary judgment under the standard of review set out in *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983) and *Havens v. Tomball Community Hosp.,* 793 S.W.2d 690, 691 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

On December 24, 1986, Simpson drove a GM Buick LeSabre into Salinas, who was directing traffic in a bank parking lot. One month before, Flowers, a GM dealer, sold the car to Simpson. Simpson had previously suffered from organic brain syndrome, severe hearing loss, and difficulty under-

---

* The Honorable WILLIAM E. JUNELL, retired Justice, Court of Appeals, Fourteenth District of Texas at Houston, sitting by assignment.

standing and communicating with others. She used a four-pronged cane to walk. At the time of the sale, Department of Public Safety and Galveston Police Department records showed Simpson had been involved in previous auto collisions, including an auto-pedestrian collision. Nevertheless, the Department renewed her license three months before the sale, apparently without requiring either a driving test or a physical examination.

The salesman, Braunsdorf, took a telephone order from Simpson for a new car; drove, on separate occasions, at least two cars to her home for her inspection; drove her to the bank for the cash payment; and delivered the vehicle to her home. Braunsdorf knew Simpson was hard of hearing, wore glasses, had difficulty understanding and communicating with people, and walked with a four-pronged cane. He also knew Simpson had driven her previous car through her garage, across an alley, and into a tree. Upon delivery and with Braunsdorf as passenger, Simpson demonstrated an inability to safely operate the car; she stepped on the accelerator harder and harder to get the car to go forward, not noticing that it was still in park. Simpson requested and was provided with disabled license plates from the dealership. Braunsdorf had reservations about the sale because of Simpson's age and physical condition, but he sold her the car anyway because otherwise, somebody else would have done so.

Appellants presented evidence of GM's expertise and of industry knowledge. R.T. O'Connell, executive vice-president at GM, testified that GM had more expertise regarding its product's characteristics, limitations, and hazards than the average consumer. James Malfetti, GM's expert on driver licensing and the "older driver," testified that GM had recognized the problem of older drivers long before this sale, beginning in the 1960's. During the 1970's and 80's, at conferences relating to elderly driver risks, GM employees had been primary speakers.

Patricia Waller, Ph.D., an expert in the field of driver licensing and the elderly driver, identified growing risks posed by the older, impaired drivers. She stated that everyone in her industry and in the auto industry recognized the elderly as a safety risk. She stated that risks posed by drivers over 65 were increasing. Such drivers did not recognize their limitations, and crashes per mile driven increased markedly for drivers 75 and older. She concluded these drivers posed a risk that should not be ignored.

Appellants showed that GM studies had identified the targeted market for the LeSabre, and had broken it down by age, income, sex, and education and GM had knowledge of the "older driver" issue. Anthony Yanik, a GM expert in designing vehicles for the "mature driver," produced voluminous GM research on older, impaired drivers and on engineering designs to meet their special needs.

Appellants alleged GM should have given this information to its dealers or to the public, i.e., that GM failed to warn of known dangers. Appellants' expert, Michael Wogalter, a human factors psychologist, stated that a manufacturer should identify its potential users (as GM had done) and then identify their limitations and warn them. He concluded the LeSabre was defectively marketed because it lacked appropriate warnings. Wogalter stated that adequate instructions to Flowers Motors would have prevented the sale to Ms. Simpson. Wogalter did not specify, however, what instructions or warnings would have been adequate.

Safety management expert Gary Nelson testified that GM's knowledge put it in the best position to warn dealers of dangers of sales to incompetent drivers. Nelson testified that training programs and warnings in an owner's manual would assist individual drivers and their friends and families in understanding the risks of the elderly driver. Nelson, however, did not offer a policy, warning, or guideline that GM should have provided.

Finally, in support of their claim that GM was in a unique position to avoid the risk of serious injuries, but chose not to do so, appellants cited to the testimony of GM's

own expert, James Malfetti, who stated that GM had a duty to train dealers to identify incompetent drivers. Malfetti states GM could train dealers by creating a checklist of issues for dealers to consider before a sale. This checklist would be similar to one already used by most dealerships to check the vehicle's condition. Gary Nelson, appellants' safety management expert, testified that manufacturers and dealers should have a training program and policy for their employees to screen potential driving risks because they have "a beautiful opportunity to protect the public at the point of the sale."

In this appeal, appellants do not contest the granting of the summary judgment on their claims of design or manufacturing defect, breach of express or implied warranty, or liability under the RESTATEMENT (SECOND) OF TORTS § 402B. Instead, appellants contest the summary judgment on only three grounds, asserting it was improper because fact issues exist concerning:

1) whether GM breached a duty under the law of negligence by failing to warn Simpson, or instruct the dealer, about the dangers to Simpson and reasonably foreseeable bystanders posed by the sale of the car to an impaired, elderly person;

2) whether GM breached a duty under the law of strict products liability by failing to warn Simpson about, instruct the dealer about, or implement a program to detect, the dangers to Simpson and to bystanders posed by the sale of the car to an impaired, elderly person; and

3) whether GM's failure to warn of foreseeable risks was a producing cause of

Salinas' death under the law of strict liability, and a proximate cause of his death under the law of negligence.

## Negligence

In point of error one, appellants assert GM breached a duty to warn. GM asserts it had no such duty.

■ The threshold inquiry in a negligence case is duty, and it is a question of law. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987).

■ Appellants rely on section 390 of the Restatement (Second) of Torts:

One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

RESTATEMENT (SECOND) OF TORTS § 390 (1965).

The official comments to section 390 state this principle "applies to *sellers,* lessors, donors or lenders, and to all kinds of bailors, irrespective of whether the bailment is gratuitous or for a consideration." RESTATEMENT (SECOND) OF TORTS § 390, comment a (1965) (emphasis added). Eight states have adopted section 390 and applied it to sellers.[1]

---

1. Alaska, California, Colorado, Georgia, Michigan, Maryland, New York, and Washington. *See, e.g., Roland v. Golden Bay Chevrolet,* 217 Cal.Rptr. 415, 704 P.2d 175 (1985) (relying on statute, court held vehicle should not have been entrusted to inexperienced driver); *Baker v. Bratrsovsky,* 689 P.2d 722 (Colo.Ct.App.1984) (in absence of actual knowledge of buyer's driving record, salesman had no duty to investigate); *Flieger v. Barcia,* 674 P.2d 299 (Alaska 1983) (addresses ownership of vehicle); *Bernethy v. Walt Failor's Inc.,* 97 Wash.2d 929, 653 P.2d 280 (1982) (seller, not manufacturer, of gun may be liable under statutory duty and section 390 not to sell to drunk person); *Fredericks v. General*

*Motors Corp.,* 411 Mich. 712, 311 N.W.2d 725, 727–28 (1981) (unguarded die set owned by GM—product held not defective and not negligently entrusted to worker); *Kahlenberg v. Goldstein,* 290 Md. 477, 431 A.2d 76 (1981) (father purchased vehicle for son despite son's numerous prior traffic violations); *Moning v. Alfono,* 400 Mich. 425, 254 N.W.2d 759, 763–64 (1977) (evaluating risk/utility of marketing sling shot to children); *Johnson v. Casetta,* 197 Cal.App.2d 272, 17 Cal.Rptr. 81 (Cal.Ct.App. 1961) (individual held liable for selling to someone who did not have valid license); *Pugmire Lincoln Mercury, Inc. v. Sorrells,* 142 Ga.App.

Appellants cite no case applying section 390 to a vehicle's *manufacturer*. Texas courts have refused to expand negligent entrustment liability to sellers, much less manufacturers of automobiles.

In *Rush v. Smitherman*, 294 S.W.2d 873, 875 (Tex.Civ.App.—San Antonio 1956, writ ref'd), a dealership was sued for selling a car to an unlicensed driver whose negligence caused an accident six days later. *Id.* The court affirmed a summary judgment for the dealer, and held that negligent entrustment liability did not apply to sellers because they could not control the car after sale, and thus, had no duty to ensure it was used safely. *Id.* at 875–76. The court stated that holding the seller liable for the buyer's negligence made no more sense than allowing a claim against one who sold gasoline to the purchaser. 294 S.W.2d at 875–76 (citing *Estes v. Gibson*, 257 S.W.2d 604, 606 (Ky.1953)); *accord Najarian v. David Taylor Cadillac*, 705 S.W.2d 809, 812 (Tex.App.—Houston [1st Dist.] 1986, no writ); *Williams v. Chaney*, 620 S.W.2d 809, 810 (Tex.Civ.App.—El Paso 1981, writ ref'd n.r.e.); *Farnsworth & Chambers Co. v. Hurst*, 338 S.W.2d 743, 751 (Tex.Civ.App.—Houston 1960, writ ref'd n.r.e.); *see also Vic Potamkin Chevrolet, Inc. v. Horne*, 505 So.2d 560, 563 (Fla.Dist.Ct.App.1987), *aff'd*, 533 So.2d 261 (Fla.1988).

Appellants contend that cases like *Rush* and *Chaney* are anachronistic, citing 17 PROSSER & KEETON, THE LAW OF TORTS § 1004, at 717–18 (1984) ("It is the negligent entrusting which creates the unreasonable risk; and this is none the less when the goods are conveyed."). We disagree. Placing this duty on manufacturers would create unprecedented liability. Appellants seek to go a step beyond what the plaintiffs sought in *Rush v. Smitherman*. Those plaintiffs sought to impose a duty on a seller; these seek to impose it on a manu-

facturer. No jurisdiction has gone that far.

Appellants further rely on *El Chico*, 732 S.W.2d at 311–14, where the supreme court held a bar liable for selling liquor to an already drunk customer who drove off intoxicated and killed a person. *El Chico* differs from this case in two important ways. First, it imposed a duty on a seller of alcoholic beverages, not on a *manufacturer*, like GM. It imposed no duty on a manufacturer to control its sales or to instruct a seller to do so. We have refused to impose a duty to warn in a similar situation. *See Malek v. Miller Brewing Co.*, 749 S.W.2d 521 (Tex.App.—Houston [1st Dist.] 1988, writ denied) (rejecting invitation to expand *El Chico* and impose duty on alcohol manufacturers to warn of dangers of intoxication and provide instructions on safe use of product). Second, the defendant (seller) in *El Chico* violated a statute; thus, it was guilty of negligence per se. 732 S.W.2d at 312 (citing TEX. ALCO.BEV.CODE ANN. § 101.63(a) (Vernon 1978)). GM did not violate a statute. No statute authorizes GM to screen bad drivers, a duty assigned by statute to the Department of Public Safety. The State of Texas, not GM, decides who may drive in this state.[2] TEX.REV.CIV.STAT.ANN. art. 6687b (Vernon Supp.1993).

Appellants assert that because this injury was foreseeable, a jury should decide the question of duty as a fact issue. *See W.C.W. v. Bird*, 840 S.W.2d 50, 55 (Tex. App.—Houston [1st Dist.] 1992, writ requested) ("The existence of duty is a question of law when all of the essential facts are undisputed, but when the evidence does not conclusively establish the pertinent facts or the reasonable inferences to be drawn therefrom, the question becomes one of fact for the jury."). We disagree.

The important facts here are undisputed. GM does not contend the injury to appellants was not foreseeable. Rather, GM

444, 236 S.E.2d 113 (1977) (dealer not liable where no evidence that vehicle entrusted with actual knowledge of driver's intoxication); *Golembe v. Blumberg*, 262 App.Div. 759, 27 N.Y.S.2d 692 (N.Y.App.Div.1941) (father bought car for his epileptic son).

**2.** GM correctly asserts that in this era of concern about discrimination against the elderly and the disabled, a person denied the opportunity to purchase an automobile because of age or disability might well sue the dealer and the manufacturer and win.

contends that foreseeability, alone, does not determine the legal duty here. Like the court in *Malek*, 749 S.W.2d at 523 (brewer has no duty to warn or instruct about the danger of intoxication), we find Justice Kilgarlin's words instructive:

> In spite of a societal dynamic to expand duty, Texas still follows a general rule that Texans do not owe others general amorphous legal duties. The rule in Texas still distinguishes between moral and legal duty. Although one may have a moral duty to prevent a blind man from crossing a busy street against a light, a person has no legal duty to do so unless additional factors exist. These other factors include the existence of familial or voluntary relationships which impose a duty, statutes or ordinances which may legally require action, or special circumstances such as having placed the blind man in his precarious position in the first place. These relationships and circumstances may be born of contract as well as other voluntary or legal origins. These are the duties that must expand and mutate in response to changes in society.

KILGARLIN & STERBA-BOATRIGHT, *The Recent Evolution of Duty in Texas*, 28 S.TEX.L.REV. 241, 245 (1986).

As in *Malek*, there are no additional factors here. There was no special relationship between GM and appellants, and it is not alleged that GM violated a statute, or controlled Simpson's conduct. *Compare Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex.1983). Therefore, we hold that GM had no duty to warn or instruct Simpson under either *El Chico*, *Otis Engineering*, or section 390.

■ Appellants also assert GM breached a duty because it controlled the sales of cars by Flowers Motors and is therefore liable under the RESTATEMENT (SECOND) OF TORTS § 414 (1977), which provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer holds a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

■ Texas adopted section 414 in *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex.1985). This rule applies when the employer maintains some control over an independent contractor's work, but not enough control to subject him to liability as a master. *Id.* Appellants contend that GM controlled Flowers Motors' practices and sales, but failed to exercise reasonable care, thus making GM liable under section 414 for the dealer's negligence in selling the car to Simpson.

R.T. O'Connell, executive vice-president at GM, testified that GM relies exclusively on dealers to sell vehicles; has a policy of continually educating dealers about its cars so that the dealers could educate their customers; closely monitors customer satisfaction and dealer sales through GM field agents; monitors dealer sales receipts daily; will capitalize dealerships and make GM financing available and M.I.C. insurance available through dealers; provides parts and instructions for GM warranty work; requires that dealers comply with standard GM layout plans making work areas being a specific size and quality; has the right to inspect the dealer premises at any time, to review dealership books, and requires dealers to fulfill standardized reporting requirements; may terminate the dealership relationship by intervening if dealer sales are poor; sends its representatives to the dealer's premises to increase sales and has the right to intervene if sales are low; and in the "most severe circumstances" when dealer sales are not satisfactory, GM will intervene and "take over the business."

We need not decide whether GM is responsible for Flowers Motors' negligence under section 414 and *Redinger*. Flowers Motors has no liability for negligent entrustment under these circumstances. *Rush*, 294 S.W.2d at 873. Thus, GM cannot be derivatively liable for negligence of Flowers Motors.

GM contends this issue is moot because at trial, the jury found that Flowers Motors was not negligent. Thus, GM contends appellants are collaterally estopped to as-

sert Flowers Motors was negligent. *Getty Oil Co. v. Insurance Co. of N. America,* 845 S.W.2d 794, 801–802 (Tex.1992). At oral argument, however, GM conceded that this summary judgment cannot be affirmed on that basis. Because the jury trial occurred after this summary judgment, the issue of collateral estoppel was not before the trial court. *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 721 (Tex. 1990).

We overrule point of error one.

### Strict Products Liability

In point of error two, appellants assert GM breached a duty under products liability law to warn Simpson of the dangers of impaired, elderly drivers, and to provide Flowers Motors guidelines to determine who is competent to drive.

■ In Texas, the existence of a duty to warn of dangers or instruct about the proper use of a product is a question of law. *Joseph E. Seagram & Sons, Inc. v. McGuire,* 814 S.W.2d 385, 387 (Tex.1991). A product may be defective and unreasonably dangerous if it lacks adequate warnings or instructions. *Id.; Lucas v. Texas Indus. Inc.,* 696 S.W.2d 372, 377 (Tex.1984). A manufacturer, however, has no duty to warn of hazards that are "generally known and recognized" or "common knowledge." *Seagram,* 814 S.W.2d at 387. "Common knowledge" are those facts that are so well known to the community as to be beyond dispute. *Seagram,* 814 S.W.2d at 388; ·

■ First, appellants assert GM had a duty to warn elderly drivers about the risks of driving while impaired or incompetent.[3] We hold that driving in those conditions poses a danger that is so well known to the community as to be beyond dispute. Thus, GM had no duty to warn Simpson or the public.

Second, appellants assert GM had a duty to warn Flowers Motors of the known risks of selling an automobile to incompetent drivers. Again, hazards posed by selling an automobile to incompetent drivers of any age are open, obvious, and generally

known and recognized. *Cf. Diggles v. Horwitz,* 765 S.W.2d 839, 842 (Tex.App.—Beaumont 1989, writ denied) (gun manufacturer had no duty to warn sellers of hazards posed by selling handguns because those hazards are obvious or actually known). Courts have found no duty to warn where the public's awareness of danger was less certain than here. *Compare Friedman v. Houston Sports Ass'n,* 731 S.W.2d 572, 575 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (Cohen, J. concurring) (11–year–old bound, as a matter of law, to have known the risk of being hit by balls at a baseball game).

■ Appellants contend, however, that some older drivers show no obvious signs of impairment, but the latent risk they pose to themselves and others is recognized only by GM and specialists in human factors. Thus, appellants assert, GM has a duty to incorporate safety features into its overall marketing plan by creating a checklist to enable dealers to detect and screen incompetent, elderly drivers.

■ Imposing such a duty on manufacturers would be unworkable and unprecedented. The Texas legislature has entrusted the Department of Public Safety, not automobile manufacturers, with the responsibility of determining who is fit to operate a motor vehicle in Texas. *See* Tex. Rev.Civ.Stat.Ann. art. 6687b (Vernon Supp. 1993). That department has a number of tools available to identify unsafe drivers: road tests, written tests, eye tests, medical evaluations, and access to medical records and records of accidents and violations. Automobile manufacturers and dealers have no such tools. Other than the vague concept of a "checklist," neither appellants nor their experts have offered any policy, guideline, or program that GM could implement to establish this driver-screening program. Appellants' theory would give dealers and manufacturers the power to determine who drives, rendering null the licensing power of the state. If the State is licensing bad drivers, then the State must do better, not GM. We hold GM had no

---

**3.** Appellants have not proposed any particular warning they claim would have been effective.

duty to warn customers or instruct the dealer. Point of error two is overruled.

Because GM owed no legal duty to warn or instruct under either the negligence or strict liability theories pleaded, the summary judgment was proper, and the causation issue in point of error three need not be addressed.

The judgment is affirmed.