Donald R. CROCKETT and Pamela
Diane Crockett, Appellants,

v.

Tammy Renee BELL, Appellee.

No. 14–94–00411–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 3, 1995.

Rehearing Overruled Oct. 12, 1995.

John B. Carroll, Don D. Becker, Houston, for appellants.

John M. McKinley, Henry S. Platts, Jr., Houston, for appellee.

Before MURPHY, C.J., and HUDSON and FOWLER, JJ.

## OPINION

FOWLER, Justice.

In this appeal by the plaintiff, Donald Crockett, and his wife, from a judgment notwithstanding the verdict, we consider whether any evidence supports the jury's finding of mutual mistake, which would set aside a release the plaintiff signed in a personal injury suit. Because there is no evidence in the record supporting the elements necessary to set aside a release on the basis of mutual mistake, we affirm the judgment notwithstanding the verdict as to Donald Crockett. However, because Donald Crockett's wife, Pamela, did not sign the release, we reverse the judgment as to her and render judgment in her favor.

## FACTS and PRIOR POSTURE

On March 10, 1989, Donald Crockett and Tammy Renee Bell were involved in a car accident. Crockett sustained head lacerations when his car struck Bell's car after she turned left into oncoming traffic. Three months after the accident, on June 29, 1989, Crockett received a $5000 payment from Bell's insurance company and signed a release. The release provided:

> For the Sole Consideration of FIVE THOUSAND & NO/100 Dollars, the receipt and sufficiency whereof is hereby acknowledged, the undersigned hereby releases and forever discharges WILLIAM BELL & TAMMY BELL, their heirs, executors, administrators, agents and assigns, and all other persons, firms and corporations liable or, who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages actions, causes of action or suits of any kind or nature whatsoever, *and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from* an accident which occurred on or about the 10 [sic] day of March, 1989 at or near Mont Belvieu, TX [emphasis added].

On August 5, 1990, a little more than a year after he signed the release, Crockett had a generalized atonic clonic seizure (formerly called a "grand mal" seizure). He went to the hospital, and saw a neurologist who diagnosed him as having a seizure disorder called complex partial seizures, which the neurologist concluded was caused by the accident. The neurologist prescribed medication, the only way to control the seizures. Although Crockett was not aware he had a problem until he had the generalized atonic clonic seizure, it appears he probably had been having minor seizures before the generalized atonic clonic seizure. Complex partial seizures are manifested by short-term memory loss, momentary losses of consciousness, and severe headaches. Because of his seizures and the medication he was taking, Crockett lost his job as a heavy equipment

operator. He was unemployed for two years, until he completed retraining as a barber.

After Crockett was diagnosed with the seizure disorder, he and his wife Pamela filed suit against Bell for lost wages, mental anguish, past and future medical expenses, and loss of consortium. The case was tried to a jury, which found Bell 75% negligent and Crockett 25% negligent, awarded Donald Crockett $90,000, and awarded Pamela Crockett $50,000 for loss of household services and loss of consortium. The jury also found that the release signed by Crockett was the result of a mutual mistake.

Bell filed a Motion for Judgment, asking the court to enter judgment notwithstanding the verdict. The trial court granted the motion and entered judgment for Bell, concluding that "the jury's finding of 'mutual mistake' must be disregarded as unsupported by evidence of a mistake on the part of [Bell] in the settlement made by her insurer."

The Crocketts bring three points of error. In points one and two, they contend the trial court erred in granting the judgment notwithstanding the verdict because there was more than a scintilla of evidence to support the jury's finding of mutual mistake, and because Bell never pled the affirmative defense of release. In their third point of error, the Crocketts contend the trial court erred in granting the judgment notwithstanding the verdict as to Pamela Crockett because she never signed the release.

## DISCUSSION

In their second point of error, the Crocketts contend the trial court erred in granting a judgment notwithstanding the verdict because they claim Bell never pled the affirmative defense of release.

■ Pleadings are to be liberally construed in favor of the pleader, particularly when the complaining party has not filed any special exceptions. *Boyles v. Kerr,* 855 S.W.2d 593, 601 (Tex.1993). Rule 45 of the Texas Rules of Civil Procedure requires that pleadings give fair notice of the claim or defense asserted. Tex.R.Civ.P. 45; *Paramount Pipe & Supply Co. v. Muhr,* 749 S.W.2d 491, 494 (Tex.1988). The purpose of the fair notice requirement is to provide the opposing party with enough information to enable him or her to prepare a defense or answer to the defense asserted. *See id.; see also Roark v. Allen,* 633 S.W.2d 804, 810 (Tex.1982). A petition is sufficient if a cause of action or defense may be reasonably inferred from what is specifically stated. *See Boyles,* 855 S.W.2d at 601; *see also Gulf, Colorado & Santa Fe Ry. Co. v. Bliss,* 368 S.W.2d 594, 599 (Tex.1963).

■ Here, Bell's original answer stated: Pleading as an affirmative defense, Defendant, Tammy Renee Bell, asserts the defense of accord and satisfaction with respect to Plaintiff's, Donald R. Crockett, claim for damages. Defendant would show the Court that she already paid to the Plaintiff the sum of FIVE THOUSAND AND NO/100 ($5,000.00) DOLLARS, which sum was paid by her automobile liability insurance carrier, State Farm Mutual Automobile Insurance Company, on behalf of Defendant, Tammy Renee Bell. *In exchange for such payment, the Plaintiff executed a Release,* and delivered same to State Farm Mutual Automobile Insurance Company on June 29, 1989. A copy of the Release is attached hereto as Exhibit "A", [sic] and is incorporated herein for all purposes, in haec verba [emphasis added].

Although Bell did not specifically assert "release" as a separate affirmative defense, it is evident from the above paragraph that the basis of Bell's defense to the suit was the release executed by Donald Crockett on June 29, 1989. Because the Crocketts did not file special exceptions asking for a clearer statement of the release defense as opposed to the defense of accord and satisfaction, we apply a liberal construction to Bell's pleadings and hold that she pled the affirmative defense of release. Appellants' second point of error is overruled.

■ The Crocketts claim in their first point of error that the trial court erred in granting a judgment notwithstanding the verdict on the issue of mutual mistake. In order to uphold the granting of a judgment notwithstanding the verdict, an appellate

court must determine that no evidence supports the jury's findings. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990). In reviewing a "no evidence" point, the appellate court must consider only the evidence and inferences tending to support the jury's verdict, and disregard all evidence and inferences to the contrary. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992); *International Piping Sys. Ltd. v. M.M. White & Assoc.*, 831 S.W.2d 444, 447 (Tex.App.—Houston [14th Dist.] 1992, writ denied). The jury's findings must be upheld if there is more than a scintilla of evidence supporting the verdict. *Mancorp*, 802 S.W.2d at 228; *Stedman v. Georgetown Sav. & Loan Ass'n*, 595 S.W.2d 486, 488 (Tex. 1979). There is more than a scintilla when the evidence creates more than a mere surmise or suspicion of its existence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

The issue before us is whether there was legally sufficient evidence to support the jury's finding that the release signed by Donald Crockett was the result of mutual mistake. The seminal case on this issue is *Williams v. Glash*, 789 S.W.2d 261 (Tex. 1990).

In *Williams*, Margaret Williams was a passenger in a car when it was struck by a car driven by Glash. While Williams's car was damaged, it was not apparent at the time of the accident that she had suffered any personal injuries. Immediately after the accident, Glash's insurance company appraised the damage to the car and provided Williams with a check for the amount of the *property damage*. The face of the check contained a code indicating it was a property damage claim. However, on the back of the check was a release that Williams signed, containing language that released Glash and the insurance company not only from liability for any property damages, but also for personal injury claims. Williams later developed physical problems as a result of the accident and attempted to bring a personal injury suit. The Texas Supreme Court reversed

the summary judgment granted by the trial court against Williams, and held that the doctrine of mutual mistake was available to determine whether parties to a release intended the release to cover the injury for which suit was later brought. *Williams*, 789 S.W.2d at 264–65.

The court listed four factors to which a court may turn in evaluating the objective circumstances surrounding execution of the release: (1) the knowledge of the parties concerning the injury at the time the release was signed; (2) the amount of consideration paid; (3) the extent of negotiations and discussions as to personal injuries; and (4) the haste or lack thereof in obtaining the release. *Id.* at 264. In *Williams*, the court determined that neither party was aware when the release was signed that Williams had sustained personal injuries, that the settlement check was for the exact amount of the property damage to the car, and that the insurance company had coded the check as a property damage settlement only. *Id.* Further, the court noted that Williams neither discussed nor bargained for settlement of a personal injury claim. *Id.* The court stated that if it can be established that "a release sets out a *bargain that was never made*, it will be invalidated." *Id.* at 265 (emphasis in original). The court concluded that "in *narrow circumstances* a party may raise a fact issue for the trier of fact to set aside a release under the doctrine of mutual mistake." *Id.* (emphasis added).

■ Applying the *Williams* factors to the evidence in the record, we first note that neither party was aware of the extent of Donald Crockett's injuries at the time the release was signed.[1]

Turning to the second factor, the amount of consideration paid, we note that the facts are less clear. The only evidence produced at trial showed that Crockett was paid $5000, and his medical bills at the time the release was signed were around $3000. However, there was no evidence presented as to why

1. Both parties make much of the fact that Tammy Bell was not involved in the release negotiations and was not aware of the release or of Crockett's injuries. This fact is not relevant to the issue of knowledge concerning the injury, as it is undisputed that *no one* knew about the seizure disorder until August 5, 1990.

the insurance company paid Crockett $2000 more than the amount of the medical damages. We have no way of knowing if the added damages were for the cost of property damage to the car, or if the damages were a bargained-for amount to cover any future medical expenses. That information simply is not in the record. All we know is that the insurance company paid Crockett more than the amount of the medical bills which had accumulated at that time.

■ "Consideration" is the surrender of valid contractual rights which a promisee is not bound to surrender. *Taylor v. Bonilla*, 801 S.W.2d 553, 556–57 (Tex.App.—Austin 1990, writ denied). Black's Law Dictionary defines "consideration" as "[t]he inducement to a contract. The cause, motive, price, or impelling influence which induces a contracting party to enter into a contract. Some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other." BLACK'S LAW DICTIONARY 306 (6th ed. 1990). *See also McCallum v. State*, 686 S.W.2d 132, 135–36 (Tex. Crim.App.1985) (listing several definitions for "consideration"). Thus, although we have information about the amount of money paid as a settlement, we have no evidence about the "consideration" for the contract on the part of either party. In other words, we do not know what the bargained-for exchange was.

■ Turning to the third factor, we find there is also no evidence in the record regarding any negotiations or discussions between Crockett and the insurance company representative about personal injuries or about any aspect of the accident or release. We do not know whether any negotiations or discussions even took place. The Crocketts contend it was Bell's burden to provide witnesses in support of her position that there was no mutual mistake, and that she should have called the insurance adjustor who handled the release to testify. We disagree. It is the burden of the party seeking reformation of a contract who must prove mutual mistake. *Matter of Coral Petroleum, Inc.*, 878 F.2d 830, 834 (5th Cir.1989); *Law Offices of C. Kendall Harrell, P.C. v. Commerce Sav.*

*Ass'n*, 824 F.Supp. 1159, 1185 (W.D.Tex. 1993). One asserting mutual mistake must bring forth the necessary facts to show the circumstances surrounding the signing of a release, including the conduct of the parties and the information available to them at the time a release is signed. *See Williams*, 789 S.W.2d at 264. We have no evidence as to discussions or negotiations.

Finally, we turn to the issue of the haste or lack thereof in obtaining the release. In *Williams*, the appraisal was done and the release signed "immediately." *Id.* at 263. Here, the evidence only indicates that the accident occurred on March 10, 1989 and the release was signed June 29, 1989—slightly less than four months later. We cannot say that the release was signed "immediately," that is, with undue haste, but neither can we say the opposite. The insurance company was obliged to pay the claim within a statutorily-defined period of time. *See* TEX.INS. CODE ANN. art. 21.55, §§ 3, 4 (Vernon Supp. 1995). Although the record does not indicate how long it took for the insurance company to receive all the information necessary to make a determination on this claim, the record does shows that the insurance company did not have the information that Crockett was suffering from post-traumatic seizures until more than a year after the accident. Crockett had gone back to work, and apparently had recovered from the accident. In light of the information available to the parties at the time, it does not appear that the insurance company acted with undue haste in paying the claim in an effort to avoid liability. Again, it was the burden of the plaintiffs to present evidence to demonstrate that the insurance company somehow acted hastily in obtaining a settlement and release of liability. We do not have such evidence in the record.

Unlike the court in *Williams*, we do not have any evidence in the record before us from which we can say that the Crocketts raised a fact issue on the question of mutual mistake. There was no evidence presented at trial which could demonstrate any objective manifestation of the parties' intent, other than the fact that neither party was aware of the severity of Crockett's injury. Although

we are confronted with tragic circumstances, we are unable to find the necessary scintilla of evidence in the record to support the jury's finding that the release was executed as a result of mutual mistake. Appellants' first point of error is overruled.

In their third point of error, the Crocketts contend the trial court erred in granting the judgment notwithstanding the verdict against Pamela Crockett because she did not sign the release. In her appellate brief, Bell concedes that the release signed by Donald Crockett does not bar Pamela Crockett's loss of consortium claim.

 An action for negligent impairment of consortium arises when a third person commits a negligent act which injures both spouses by virtue of their relationship to each other. *Whittlesey v. Miller*, 572 S.W.2d 665, 667 (Tex.1978). The non-injured spouse sustains damage to emotional interests stemming from the relationship, and may seek recovery for harm to "the intangible or sentimental elements." *Id.* While the non-injured spouse's claim for loss of consortium is derivative of the injured spouse's negligence claim, the consortium action is nevertheless independent and apart from the action of the injured spouse. *Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 740 (Tex.1980); *Whittlesey*, 572 S.W.2d at 667; *see also McGovern v. Williams*, 741 S.W.2d 373, 374 (Tex.1987).

 A spouse's loss of consortium claim is not barred by a settlement agreement or release executed by the injured spouse if the non-injured spouse did not sign the release. *Whittlesey*, 572 S.W.2d at 669. However, any percentage of negligence attributable to the injured spouse correspondingly reduces the amount of recovery for the loss of consortium claim. *Reed Tool*, 610 S.W.2d at 738–39.

Pamela Crockett's loss of consortium claim is not barred by the release Donald Crockett signed. However, because the jury found that Donald was 25% negligent, Pamela's recovery must be reduced by that percentage. Accordingly, we reverse the trial court's judgment notwithstanding the verdict as it pertains to Pamela Crockett, and render judgment that she recover the damages awarded by the jury, reduced by the percentage of negligence attributable to Donald, plus pre- and postjudgment interest.

Prejudgment interest is ordered on damages of $37,500 at the rate of 10% simple interest from March 12, 1991, the day suit was filed, through April 19, 1994, the day preceding the day judgment was rendered in the trial court. TEX.REV.CIV.STAT.ANN. art. 5069–1.05, §§ 6, 7 (Vernon Supp.1995). Postjudgment interest shall accrue on damages of $37,500 at the rate of 10%, compounded annually, from April 20, 1994, the date of judgment, until the day the judgment is satisfied. TEX.REV.CIV.STAT.ANN. art. 5069–1.05, §§ 2, 3 (Vernon Supp.1995).

### CONCLUSION

We AFFIRM the trial court's judgment notwithstanding the verdict as to Donald Crockett, and REVERSE the judgment notwithstanding the verdict as to Pamela Crockett and RENDER judgment in her favor.