v99299



NUMBER 13-99-299-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

____________________________________________________________________

RYAN SERVICES, INC., Appellant,


v.


CHARLES M. BOBBINS AND PRISCILLA B. DOBBINS, Appellees.

____________________________________________________________________



On appeal from the 329th District Court of Wharton County, Texas.

____________________________________________________________________


O P I N I O N

Before Justices Dorsey, Yañez, and Seerden (1)

Opinion by Justice Yañez


Appellant, Ryan Services, Inc. ("RSI"), appeals from a judgment rendered in favor of appellees, Charles M. Dobbins
("Dobbins") (2) and Priscilla B. Dobbins, for personal injuries arising out of an automobile accident. A jury found Ricky
Moore, RSI's employee and driver of the truck involved in the accident, 99% negligent and Dobbins 1% negligent. The
jury also found RSI liable for negligent entrustment with malice and awarded Dobbins $500,000 in punitive damages. The
trial court granted Dobbins's motion for judgment notwithstanding the verdict (JNOV) and set aside the finding
apportioning 1% of the fault to Dobbins. In three issues, RSI challenges: (1) the legal sufficiency of the evidence
supporting the jury's finding of negligent entrustment; (2) the legal sufficiency of the evidence supporting the jury's finding
of malice; and (3) the trial court's action in setting aside the finding that Dobbins was 1% negligent. We affirm.

Background


RSI is a family-owned trucking business, which hauls oil-field equipment. On the morning of November 6, 1997, as
Dobbins was driving to work, his car collided with an RSI truck driven by Moore at a highway intersection near Wharton.
According to the police officer who investigated the accident, Moore ran a red light and hit Dobbins's vehicle. According
to the police report, Moore admitted that he ran the red light because he was trying to keep up with another RSI truck. (3) At
trial, Dobbins testified he recalled driving to work but did not recall the specifics of how the accident occurred.

Bob Ryan, Vice-President of RSI, testified that Moore was employed as a driver for RSI from 1982 to around 1989, when
he was fired for insubordination. (4) Ryan testified Moore was rehired in 1991 or 1992 and continued as a driver for the
company until his death in 1997. On Moore's employment application with RSI, which was dated October 11, 1994 and
introduced at trial, Moore indicated he had no convictions for traffic violations for the prior three years and had not been
involved in an accident for five years. Ryan testified that before he rehired Moore, he obtained a moving vehicle report
("MVR"), which, contrary to the information Moore provided, indicated that during the previous five years, Moore had a
conviction for driving while intoxicated ("DWI"), had been involved in at least one alcohol-related accident, and had
received several other citations for moving and over-weight violations. Ryan testified that he questioned Moore about the
accident and tickets reflected on his driving record, but hired him anyway. Ryan also testified that three days before the
accident underlying the present case, on November 3, 1997, he ran another MVR on Moore in connection with an annual
driving record review required by the United States Department of Transportation. Ryan testified that when he signed the
form certifying that he had reviewed Moore's driving record and that Moore met the minimum requirements for safe
driving, he was aware Moore's license had been suspended for a three-month period from June 1996 to September 1996. 
During the time Moore's license was suspended, he had continued to drive without interruption for RSI.

Dobbins sued Moore and RSI for negligence; he also sued RSI for negligent entrustment. The jury found Moore was 99%
negligent and Dobbins 1% negligent. The jury also found RSI liable for negligent entrustment and gross negligent
entrustment and awarded $275,000 in actual damages and $500,000 in punitive damages. The trial court disregarded the
jury's apportionment of 1% negligence to Dobbins and rendered judgment against RSI for the full amount of actual and
punitive damages. In three issues, RSI challenges the legal sufficiency of the evidence supporting RSI's liability for
negligent entrustment and gross negligent entrustment and the trial court's disregard of the finding apportioning 1% of the
fault to Dobbins. RSI does not challenge on appeal the jury's finding that Moore was negligent or the award of actual
damages. 

Legal Sufficiency


When we review a legal sufficiency of the evidence point of error, we must consider all the evidence in a light favorable to
the party in whose favor the verdict was rendered, and every reasonable inference raised by the evidence is to be indulged
in that party's favor. Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc., 960 S.W.2d 41, 48 (Tex.
1998); Hines v. Comm'n for Lawyer Discipline, 28 S.W.3d 697, 701 (Tex. App.--Corpus Christi 2000, no pet.). A legal
sufficiency point may only be sustained when the record discloses: (1) a complete absence of evidence of a vital fact; (2)
the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3)
the evidence offered to prove a vital fact is no more than a mere scintilla; and (4) the evidence established conclusively the
opposite of the vital fact. Juliette Fowler Homes, Inc. v. Welch Assoc., 793 S.W.2d 660, 666 n. 9 (Tex. 1990). If there is
more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails. Formosa, 960 S.W.2d at
48;Stafford v. Stafford, 726 S.W.2d 14, 16 (Tex. 1987). When the evidence offered to prove a vital fact is so weak as to do
no more than create a mere surmise or suspicion of its existence, the evidence is not more than a scintilla and, in legal
effect, is no evidence. Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). The test for the application of this no
evidence rule is: if reasonable minds cannot differ from the conclusion, then the evidence offered to support the existence
of a vital fact lacks probative force, and it will be held to be the legal equivalent of no evidence. Id.; Hines, 28 S.W.3d at
701. 

Negligent Entrustment


In its first issue, RSI challenges the legal sufficiency of the evidence supporting the jury's finding of negligent entrustment.
To establish an automobile owner's liability for negligent entrustment, there must be a showing of: (1) entrustment of the
vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known
was unlicensed, incompetent, or reckless; (4) that the driver was negligent on the occasion in question; and (5) that the
driver's negligence proximately caused the accident. Schneider v. Esperanza Transmission Co., 744 S.W.2d 595, 596 (Tex.
1987); Williams v. Steves Industries, Inc., 699 S.W.2d 570, 571 (Tex. 1985); Garcia v. Cross, 27 S.W.3d 152, 155 (Tex.
App.---San Antonio 2000, no pet.); Zamora v. Dairyland County Mut. Ins. Co., 930 S.W.2d 739, 742 (Tex. App.--Corpus
Christi 1996, writ denied). RSI argues it was not negligent in entrusting its truck to Moore because the State of Texas had
issued a commercial driver's license to Moore. RSI contends that because the State relied on Moore's driving record in
deciding to issue him a license, Dobbins cannot rely on Moore's record as evidence that RSI was negligent in entrusting its
truck to him on the grounds he was an unfit driver.

RSI cites Salinas v. General Motors Corp., 857 S.W.2d 944 (Tex. App.--Houston [1st Dist.] 1993, no writ), in support of
its argument that Dobbins is barred from citing Moore's driving record as evidence of negligent entrustment. In
Salinas,Lena Simpson, an 89-year-old woman who was hard of hearing and had difficulty understanding and
communicating with others, bought a General Motors ("GM") car from a dealer and later struck and killed Salinas. Id. at
945-46. The plaintiffs sued GM, the car dealer, the salesman who sold Simpson the car, and Simpson's estate in a wrongful
death and survival action. Id. at 945. The trial court granted summary judgment in favor of GM and the plaintiffs
appealed, contending that under both the law of negligence and strict product liability, GM had a duty to warn Simpson and
instruct the dealer regarding the dangers of sales to incompetent drivers. In affirming the summary judgment in GM's
favor, the Salinas court declined to extend negligent entrustment liability to GM, the vehicle's manufacturer. Id. at 948. 
The court also held GM had no duty to warn under the law of strict product liability because the risks of driving while
impaired or incompetent are well known. Id. at 950. The court held that imposing such a duty on manufacturers was
"unworkable" because the Texas Department of Public Safety, which is charged with the responsibility of determining
fitness to operate a motor vehicle, is better-positioned and has superior tools and resources available for discharging such a
responsibility than automobile manufacturers. Id.

We do not find Salinas applicable to the present case. RSI is the owner of the truck involved in the accident, not
themanufacturer. We recognize that whether a driver is licensed may be relevant in negligent entrustment cases. See
Medina v. Salinas, 736 S.W.2d 224, 225 (Tex. App.--Corpus Christi 1987, writ denied). However, this Court has also
noted that the fact that a negligent driver held a valid driver's license does not, in and of itself, dispose of a negligent
entrustment claim. See Nobbie v. Agency Rent-a-Car, Inc., 763 S.W.2d 590, 592 (Tex. App.--Corpus Christi 1987, writ
denied). The Texas Supreme Court has noted that "whether a driver has a license does not determine whether a driver is, in
fact,incompetent. Some incompetent drivers are licensed, and some competent drivers are unlicensed." Williams, 699
S.W.2d at 574 (emphasis in original).

Moreover, as noted, an owner may be found liable for negligent entrustment if a driver is unlicensed, incompetent
orreckless. Id. at 571. In the present case, RSI's liability for negligent entrustment was not predicated on the theory that
Moore was an unlicensed driver, but rather, that RSI knew or should have known that Moore was a reckless driver. A
review of the record before us reveals some evidence of all the necessary elements of negligent entrustment, including the
element that RSI knew or should have known that Moore was a reckless driver. Even if we exclude from consideration all
evidence in the record regarding Moore's driving record except that pertaining to the period after his rehiring by RSI in
1994, (5) we conclude that the evidence is legally sufficient to establish that RSI knew or should have known that Moore
was a reckless driver. 

As noted above, Ryan testified that he knew Moore's 1994 employment application contained false information, but that he
hired him anyway:

Q [Dobbins's counsel]: Do you remember you had fired him in there, too; and he had come back in 1994?



A [Ryan]: Yes, sir.



Q: He filled out an application, and how many wrecks and tickets did he say he had?



A: He put down none.



Q: And you were legally obligated to check his driving record, weren't you?



A: Yes.



Q: And that was for five years that he said had [sic] he had no wrecks or no tickets?



A: Yes.



Q: And that wasn't true, was it?



A: No.



On January 9, 1996, Moore pled guilty to a speeding violation. Ryan testified that the violation involved an RSI truck and
that RSI paid the ticket. He also testified that at the time of the violation, RSI obtained an MVR to send to the judge:

A [Ryan]: We got a --- we ran an MVR to send to the Judge.



Q [Dobbins's counsel]: So, this date you know you got his driving record because you had to send it to the Judge; and his
driving record would have showed all of that; wouldn't it?



A: Yes, sir.



Q: So, in '96, the year before this accident, you knew all of this, didn't you?



A: Yes, sir.



Q: What did you do about it?



A: Nothing. 



At trial, Dobbins's counsel questioned Ryan about the 1996 MVR and read excerpts from Ryan's deposition testimony:

Q [Dobbins's counsel, reading from deposition]: "In 1996---You are telling the jury that you got this man's driving record in
'96, before this accident, and you didn't look at it when you were trying to get him out of this ticket in Polk County?



"Yes, sir, it was just a matter of paperwork."



"Why didn't you look at it?"



"Too busy. My secretary sent this off for him to send to the Judge in Polk County."



So, when you got his record in '96 and you were trying to take care of his ticket, this one right here---



A [Ryan]: Right.



Q: --- you got his driving record, which would have shown you all of this; and you didn't even read it. That's the truth of
the matter, isn't it?



A: Yes, we were just--- that driving --- that MVR was to be sent to the judge in Polk County; and we were just doing this
for Ricky to get him to take the defensive driving course. 



On May 10, 1996, Moore was charged with DWI. He refused to take a blood/breath test and his license was suspended
from June 18, 1996 through September 15, 1996. During the period his license was suspended, he continued to drive for
RSI. On January 2, 1997, RSI's office manager certified, in a document entitled "Motor Vehicle Driver's Certification of
Violations," that Moore had not been convicted of any traffic violations for the previous twelve months. The period
covered by the report clearly includes January 9, 1996, when Moore 's speeding citation was issued. Although RSI paid for
the ticket, the report makes no mention of it. On November 3, 1997, three days before the accident, Ryan signed a
document entitled "U.S. Department of Transportation Motor Carrier Safety Program Annual Review of Driving Record,"
in which he certified that he had reviewed Moore's driving record and found that he met the "minimum requirements for
safe driving." Ryan testified that when he completed the certification on November 3, 1997, he knew that Moore's license
had been suspended for three months in 1996 and that Moore had continued to drive during the suspension period:

Q [Counsel]: And you certified him as being a safe driver three days before this accident and told the government you had
read his driving records, right?



A: Yes.



Q: Well, his driving record said that the year before he didn't even have a driver's license when he was driving for you. So,
either you didn't read the driving record, like you swore; or you read the driving record and you saw he didn't have a license
and you didn't care. Which one was it?



A: I knew that his license had been suspended in '96, yes.



Q: So, you knew three days before this accident that he had been driving a truck for you with his license suspended, correct?



A: Back in '96, yes, sir.



Q: And what did you do about it?



A: Nothing. 



 We conclude that the jury could reasonably have concluded that RSI knew or should have known that Moore was a
reckless driver. We hold that the evidence is legally sufficient to support the jury's finding that RSI negligently entrusted
its vehicle to Moore. We overrule RSI's first issue. 

Grossly Negligent Entrustment 


By its second issue, RSI contends that there is legally insufficient evidence to support the jury's finding of malice. More
specifically, RSI argues that the evidence is insufficient to show that RSI's actions "involved an extreme degree of risk" or
that the harm suffered by Dobbins "resulted from" RSI's malice. RSI argues that because this accident involved running a
red light, Dobbins cannot rely on Moore's off-the-job DWI convictions or other violations, including those for speeding,
defective brakes, and weight violations, to show "extreme risk" of the type of harm that actually occurred.

The Texas Supreme Court has defined gross negligence as

the breach of duty involving an extreme degree of risk, considering the probability and magnitude of the potential harm to
others (an objective element) when the actor has actual awareness of the risk involved but nevertheless proceeds in
conscious indifference to the rights, safety, or welfare of others (a subjective element). Evidence of gross negligence is
legally sufficient if, considered as a whole in the light most favorable to the prevailing party, it rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions. . . . A court reviews all surrounding facts and
circumstances to decide if a corporation itself is grossly negligent. The inquiry "is determined by reasonable inferences the
factfinder can draw from what the corporation did or failed to do and the facts existing at relevant times that contributed to
a plaintiff's alleged damages."



General Motors Corp. v. Sanchez, 997 S.W.2d 584, 595-96 (Tex. 1999) (citations omitted). An "extreme degree of risk" is
a likelihood of serious injury. Id. at 596. 

Punitive damages can be imposed against the owner of a vehicle in a negligent entrustment case if the owner knows or
should have known that the entrusted driver was incompetent or habitually reckless and the owner was grossly negligent in
entrusting the vehicle to that driver. Schneider, 744 S.W.2d at 596. Ryan testified that allowing an unskilled, incompetent,
or reckless driver to drive an eighteen-wheeler can be very dangerous. The record reflects that RSI knew that Moore's
license had been suspended for three months and that he continued to drive for RSI during that time. Moore's driving
record showed he had received numerous speeding tickets, citations for other violations, and had been involved in an
alcohol-related accident. We conclude that the evidence is legally sufficient to establish the objective prong of the gross
negligence test. 

The subjective element of gross negligence requires that the defendant knew about the danger, but its acts or omissions
demonstrate that it did not care. Sanchez, 997 S.W.2d at 596. This element may be shown by direct or circumstantial
evidence. Id. As noted, Ryan testified that he knew Moore lied on his 1994 employment application when he stated he had
no convictions for traffic violations or accidents in the previous three years, but that RSI hired him anyway. On January 2,
1997, when RSI certified that Moore had no tickets or accidents for the preceding twelve months, it was aware of his
January 9, 1996 citation for speeding, but did not report it. On November 3, 1997, RSI certified Moore as a safe driver,
even though it knew Moore had continued to drive for RSI during the three-month period when his license was suspended.
(6) We find that the evidence is legally sufficient to establish the subjective prong of the gross negligence test. We hold the
evidence is legally sufficient to support the jury's finding of malice and that the award of punitive damages was proper. We
overrule RSI's second issue. 

Contributory Negligence


By its third issue, RSI contends the trial court erred in disregarding the jury's finding apportioning 1% of negligence to
Dobbins. The trial court disregarded the finding on the grounds that the finding was supported by no evidence and legally
insufficient evidence. RSI argues that some evidence supports the jury's finding because conditions at the intersection
provided a clear line of sight and if Dobbins had been keeping a proper lookout, he would have noticed Moore's truck
coming through the intersection. RSI also argues there was some evidence that Dobbins was distracted because he
sometimes ate and drank in his car on his way to work. 

A trial court may render judgment n.o.v. if there is no evidence to support one or more jury findings on issues necessary to
liability. Tex. R. Civ. P. 301; Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). In determining a "no
evidence" question, however, a court must consider only that evidence and reasonable inferences therefrom that tend to
support the jury findings, disregarding all contrary evidence and inferences. Id. In order to uphold the granting of a
judgment notwithstanding the verdict, an appellate court must determine that no evidence supports the jury's findings.
Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex. 1990); Crockett v. Bell, 909 S.W.2d 70, 73 (Tex. App.--Houston
[14th Dist.] 1995, no writ). The jury's findings must be upheld if there is more than a scintilla of evidence supporting the
verdict. Bell, 909 S.W.2d at 73. There is more than a scintilla when the evidence creates more than a mere surmise or
suspicion of its existence. Id. 

In support of its argument that there was some evidence that Dobbins was distracted, RSI points to Dobbins's testimony:

Q [Counsel]: The accident, you already told us that you don't recall any of the events of the accident, itself; just I guess
pulling out of you [sic] neighborhood onto Alabama and intend [sic] going on to work that morning. Was there any kind of
distraction? Did you have any kind of distraction inside your car? The reason I ask: Dr. Lesley, the neuropsychologist's
records related that you--- I think you were referred to---



A [Dobbins]: Yes.



Q: ---sent to by Mr. Cannon. There was some notation that one minute you remembered I guess eating a Power Bar,
drinking juice; next minute, next thing you remembered was waking up in the hospital. Was it your practice to, on the way
to work, eat and drink juice inside your car?



A: That is your question?



Q: Yes, sir, that was a kind of a round about way.



A: Yes, it was. On occasion, yes, I did--- I don't drink juice; but I had tea. I drink a Power Bar. I mean I eat a Power Bar.



Q: Do you recall whether or not that was the case before the accident?



A: No, I don't remember anything about a Power Bar.



We find Dobbins's testimony that he ate in his car "on occasion," but does not recall doing so on the morning of the
accident, constitutes no more than a scintilla of evidence in support of the jury's finding. We conclude there is no evidence
supporting the finding apportioning 1% of negligence to Dobbins. Accordingly, the trial court did not err in setting aside
the jury's finding that Dobbins was 1% negligent. We overrule RSI's third issue. 

The judgment of the trial court is affirmed.

 

LINDA REYNA YAÑEZ

Justice



Do not publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this the

7th day of June, 2001.

1. Retired Chief Justice Robert J. Seerden assigned to this Court by the Chief Justice of the Supreme Court of Texas
pursuant to TEX. GOV'T CODE ANN.§ 74.003 (Vernon 1998).

2. References to "Dobbins" mean Charles Dobbins. Although Dobbins's wife, Priscilla, is a party to the lawsuit, she had no
involvement in the events underlying this case. 

3. Although the officer did not observe the accident, he testified that Moore told him he ran the red light. Moore was
unavailable to testify because he died in an unrelated house fire prior to trial. 

4. Documents in Moore's personnel file reflects that he was terminated by Ryan on April 21, 1989.

5. The record reveals that prior to 1994, Moore had three convictions for driving while intoxicated, at least two citations for
speeding, and was involved in an accident which resulted in $11,000 in damages. The officer investigating that accident
determined that speeding and being under the influence of alcohol were factors contributing to the accident. A copy of the
accident report was in Moore's personnel file accompanied by a fax cover sheet on RSI's letterhead dated October 21, 1992. 
 

6. A copy of Moore's driving record reflecting that his license was suspended was faxed to RSI's office on November 11,
1996. The report was found in Moore's personnel file.